KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
E-mail: kkaiser@agutah.gov
Attorney for Defendants

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| MIKEL RAY BROWN,<br><br>   Plaintiff,<br><br>v.<br><br>DARRELL GRIGGS, et al.,<br><br>   Defendants. | **DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:22-cv-00091<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... ii
TABLE OF AUTHORITIES ............................................................ iii
MOTION ....................................................................................... 1
MEMORANDUM OF LAW ............................................................ 4
    INTRODUCTION ..................................................................... 4

    RELEVANT FACTS.................................................................... 5

    LEGAL STANDARD.................................................................. 11

    LEGAL ARGUMENT ................................................................ 14

        1.        Claims against Sen. McCay should be dismissed because they are entitled to legislative immunity. ............................................................. 14

        2.        Brown's federal constitutional claims should be dismissed. ... 17

        2.1    The Officers are entitled to qualified immunity on Brown's § 1983 claims.......................................................... 18
        2.1.1.  The False Arrest Claim..................................................... 18
        2.1.2.  The First Amendment Claim ........................................... 24
        2.1.3.  The "Class of One" Claim ................................................ 28
        2.1.4.  The Sixth Amendment Claim ........................................... 31
        2.2    Brown's supervisor liability claims should be dismissed......... 33
        3.        Brown's state-law claims should be dismissed ...................... 36

        4.        Brown's claim for equitable relief should be dismissed.......... 38

    CONCLUSION ........................................................................ 40
    WORD COUNT CERTIFICATION .............................................. 41

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*A.M. v. Holmes,*
   830 F.3d 1123 (10th Cir. 2016) ................................................................ 19, 29, 31

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ........................................................................................... 12

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ........................................................................................... 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... 11

*Atwater v. City of Lago Vista,*
   532 U.S. 318 (2001) ........................................................................................... 23

*Avila v. Est. of Kroogman,*
   No. 3-02CV851, 2006 WL 214032 (D. Conn. Jan. 27, 2006) ..................... 15

*Avila v. Witkowski,*
   219 F. App'x 62 (2d Cir. 2007) ...................................................................... 16

*Baker v. McCollan,*
   443 U.S. 137 (1979) ........................................................................................... 32

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ............................................................................................. 15

*Chavez v. Ill. State Police,*
   251 F.3d 612  (7th Cir. 2001) .......................................................................... 34

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ............................................................................................. 39

*District of Columbia v. Wesby,*
   138 S. Ct. 577 (2018) ................................................................................. 13, 23

*Doe v. McMillan,*
   412 U.S. 306 (1973) .................................................................................... 15, 16

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975) ........................................................................................... 16

*Estate of Harmon v. Salt Lake City,*
   471 F. Supp. 3d 1203 (D. Utah 2020).......................................................... 12

*Frasier v. Evans,*
   992 F.3d 1003 (10th Cir. 2021) ...................................................................... 28

*Frey v. Town of Jackson, Wyo.,*
   41 F.4th 1223 (10th Cir. 2022) ................................................................ 24

*Grave v. United States,*
   408 U.S. 606 (1972) ................................................................................ 15

*Hall v. Witteman,*
   584 F.3d 859 (10th Cir. 2009) ................................................................ 11

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ................................................................................ 12

*Harwell v. Campbell,*
   No. 519CV00027KDBCK, 2020 WL 594107 (W.D.N.C. Feb. 6, 2020) ...................... 35

*Hawver v. Nuss,*
   No. 5:14-cv-04084-DGK, 2015 WL 1470397 (D. Kan. March 31, 2015) .................... 38

*Heaney v. Roberts,*
   147 F. Supp. 3d 600 (E.D. La. 2015) ...................................... 21, 22, 23, 28

*Heaney v. Roberts,*
   846 F.3d 795 (5th Cir. 2017) .................................................................. 22

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs,*
   962 F.3d 1204 (10th Cir. 2020) ................................................ 25, 26, 27

*Horocofsky v. City of Lawrence, Kan.,*
   No. 20-2529-EFM, 2022 WL 1421554 (D. Kan. May 5, 2022) ................................ 31

*Hunt v. Iron Cnty.,*
   372 F. Supp. 3d 1272 (D. Utah 2019) ...................................................... 36

*Jennings v. Stillwater,*
   383 F.3d 1199 (10th Cir. 2004) .............................................................. 30

*Johns v. Stewart,*
   57 F.3d 1544 (10th Cir. 1995) ................................................................ 38

*Kan. Penn Gaming, LLC v. Collins,*
   656 F.3d 1210 (10th Cir. 2011) .......................................................... 29, 30

*Kaufman v. Higgs,*
   697 F.3d 1297 (10th Cir. 2002) .............................................................. 20

*Kindt v. Santa Monica Rent Cntrl. Bd.,*
   67 F.3d 266 (9th Cir. 1995) .................................................................... 21

*Kirby v. Illinois,*
   406 U.S. 682 (1972) ................................................................................ 32

*Kladis v. Brezek,*
   823 F.2d 1014 (7th Cir. 1987) ................................................................ 32

*Koch v. City of Del City,*
   660 F.3d 1228 (10th Cir. 2011) ........................................................ 18, 19

iv

*Kosessel v. Sublette Cnty. Sheriff's Dep't*,
  717 F.3d 736 (10th Cir. 2013) ................................................................ 29

*Leverington v. City of Colo. Springs*,
  643 F.3d 719 (10th Cir. 2011) ................................................................ 11

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) .............................................................................. 12

*Montoya v. Vigil*,
  898 F.3d 1056 (10th Cir. 2018) .............................................................. 12

*Mullenix v. Luna*,
  577 U.S. 7 (2015) .................................................................................. 13

*Nieves v. Bartlett*,
  ___ U.S. ___, 139 S. Ct. 1715 (2019) ........................................ 25, 26, 27

*Norse v. Santa Cruz*,
  629 F.3d 966 (9th Cir. 2010) ............................................................ 21, 28

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .......................................................................... 12, 13

*Quinn v. Young*,
  780 F.3d 998 (10th Cir. 2015) ................................................................ 24

*Raiser v. Kono*,
  No. 06-4243, 245 F. App'x 732 (10th Cir. July 5, 2007) ............................ 38

*Rudd v. Graves*,
  No. 01-3264, 22 F. App'x 954 (10th Cir. Oct. 24, 2001) ........................... 32

*Serna v. Colo. Dep't of,*
  *Corrs.*, 455 F.3d 1146 (10th Cir. 2006) .................................................. 33

*Sexton v. City of Colo. Springs, Colo.*,
  No. 20-cv-2248-WJM-KMT, 2022 WL 168714 (D. Colo. Jan. 19, 2022) ...... 27

*Shook v. Bd. of Cnty. Commr's of Cnty. of El Paso*,
  543 F.3d 597 (10th Cir. 2008) ................................................................ 39

*Smith v. Allbaugh*,
  987 F.3d 905 (10th Cir. 2021) .......................................................... 34, 36

*Smith v. Bd. of Regents of N.M.*,
  No. 10-cv-00518 MV/WDS, 2011 WL 13289837 (D.N.M. Mar. 29, 2011) ..... 39

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .............................................................................. 11

*United States v. Denton*,
  775 F.3d 1214 (10th Cir. 2014) .............................................................. 19

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) (per curiam) ........................................................... 29

v

*Virginia v. Moore,*
   553 U.S. 164 (2008) ................................................................ 19

   State Cases

*Amica Mut. Ins. Co. v. Schettler,*
   768 P.2d 950 (Utah Ct. App. 1989) ........................................ 37
*Lee v. Langley,*
   2005 UT App 339, 121 P.3d 33 ................................................ 37
*Riddle v. Perry,*
   2002 UT 10, 40 P.3d 1128 ........................................................ 14
*State v. Chima,*
   463 P.2d 802 (Utah 1970) .................................................. 20, 21

   Federal Statutes

42 U.S.C. § 1983 ............................................................. 17, 18, 19
U.S. Const. amend. VI .................................................................. 32

   State Statutes

Utah Code § 63G-7-201(4)(b) .................................................... 37
Utah Code § 63G-7-201(3)(c)(i) ................................................ 37
Utah Code § 76-9-103 ............................................................ 9, 20
Utah Const. art. VI, § 8 ................................................................ 14

   Federal Rules

Fed. R. Civ. P. 10(c) ...................................................................... 11
Fed. R. Civ. P. 65(d)(1) ................................................................ 39
Federal Rule of Civil Procedure 12(b)(6) .................................... 1

   Other Authorities

6 Am. Jur. 2d *Assault and Battery* § 96 ...................................... 37
27 C.J.S. *Disturbance of Public Meetings* § 4 (Supp. 2022) ............. 20
*Construction and Application of Federal and State Constitutional and Statutory Speech or Debate Provisions,* 24 A.L.R. 6th 255 (2007) ............................ 14
DUCivR 7-1(a)(5)(A) .................................................................... 41

vi

## MOTION

Defendants, through counsel, under Federal Rule of Civil Procedure 12(b)(6), move the Court to dismiss Plaintiff Mikel Ray Brown's Verified Complaint (doc. 25) ("Amended Complaint," or "Am. Compl.") against all Defendants, with prejudice. The bases of the Motion include:

- Brown's claims for damages against and Senator McCay must be dismissed because they are entitled to legislative immunity;

- Defendants are entitled to qualified immunity on Brown's claims for damages under the U.S. Constitution:

  o Brown's Fourth Amendment claim fails to state a claim because the officers acted with probable cause, or at least arguable probable cause, entitling the officers to qualified immunity;

  o Brown's First Amendment claim fails because the officers acted with probable cause, and Brown cannot plead plausible facts showing that any officer arrested him because of his particular speech;

  o Brown's "class-of-one" equal protection claim fails because he cannot demonstrate that he was treated differently than everyone else similarly situated;

1

o Brown's Sixth Amendment claim fails because he was not taken into custody and was otherwise provided all necessary information;

o Brown's supervisor liability claims against Senator McCay and Col. Rapich fail because:

- Brown cannot plausibly allege that Sen. McCay is a supervisor of Sergeant-at-Arms Griggs; [1]

- There were no underlying constitutional violations; and

- Brown has not pleaded any personal participation by the supervisors causing a constitutional violation;

o Brown's state law claims fail to state a plausible claim because the Governmental Immunity Acct of Utah immunizes the Individual Defendants from liability, and the state law claims fail to state a legally sufficient claims.

---

[1] Brown alleges that Grigg is, "and at all times relevant herein" was, the Senate Sergeant-at-Arms.  Am. Compl. ¶ 2. To be accurate, at the time in question Griggs was an employee under the Sergeant's direction.  He is now the Senate's Sergeant-at-Arms. However, that is a distinction without a difference for this motion.

2

o Brown's request for Declaratory / Injunctive relief must be dismissed because there is no active controversy between the parties and Brown's request asks for nothing more than the Defendants to follow the law.

For these reasons, more fully described in the following Memorandum, the Court should dismiss Brown's Amended Complaint with prejudice.

3

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff Mikel Brown attended a Senate hearing at the Utah State Capitol building to listen to the debate about HB60. There, he learned that the Utah Senate had a rule prohibiting the display of stickers during a hearing. Nonetheless, he received and displayed stickers. A representative of the Senate Sergeant-at-Arms and Highway Patrol officers assigned to the capitol told Brown both to put the stickers away and give them up, but he did not.

When the chair of the committee told the attendees that he had to suspend the meeting because people were not following the rules, Brown was still displaying a sticker and refused to relinquish them to law enforcement. When Troopers with the Utah Highway Patrol asked to talk with him outside the meeting, he refused. When officers attempted to escort him out, he pulled away and was handcuffed.  He was carried down to a dedicated UHP squad room. There, they cited him for disrupting a public meeting and released him.

Brown originally sued for violations of the Fourth Amendment, alleging false arrest, excessive force, false imprisonment, failure to intervene, as well as state torts.  He sought damages and equitable relief.  In response to the

4

defendants' motion to dismiss, Brown amended his complaint.  In the place of
multiple Fourth Amendment claims are a singular Fourth Amendment excessive
force claim and claims under First Amendment, Fifth Amendment, and Sixth
Amendment, along with claims of supervisor liability and claims founded in state
tort liability.

Even after these amendments, Brown's complaint should be dismissed.

### RELEVANT FACTS[2]

1.  On March 1st, 2022, Plaintiff Mikel Brown attended a senate committee
meeting at the Utah State Capitol. [3]

2.  Brown received at least two stickers that read "Vote Yes, HB60." He placed
one sticker on his hat and the other on his shirt.[4]

3.  Before the meeting began, Brown was told that stickers were not allowed at
the meeting.[5] Brown challenged the assertion, but was informed that if he didn't

---

[2] The following facts, taken from Brown's complaint and judicially noticeable sources are
taken as true for purposes of the motion to dismiss only. Defendants reserve their right
to later dispute these facts.

[3] Pl.'s Am. Compl. (doc. 25) ¶ 24.

[4] Am. Compl. ¶¶ 27–29.

[5] Am. Compl. ¶¶ 30, 38, 40.

take off visible stickers before the meeting began, he would be excluded from the meeting.[6]

4.  Senator Daniel McCay, the chairman of the committee, opened the meeting and began by addressing the rules of the meeting.[7]

5.  When addressing the meeting rules, Senator McCay said "[w]e do not allow posters, we do not allow stickers, we do not allow, you know, outbursts or those kinds of things. We do not allow flag waving, we don't allow, you know, other kinds of protests, chants. We don't allow demonstrations of how you feel about the bill."[8]

6.  Senator McCay then said "[m]y understanding is that there are people in the room that are violating this rule at the moment. As a result, I am asked, and I am going to, recess this committee for about five minutes, painfully, while we wait for some who've decided that they don't want to follow those rules. So I'm

---

[6] Am. Compl. ¶ 40.
[7] Audio recording: HB60 Senate Committee Meeting (Mar. 1, 2022), at 1:00 (attached as Exhibit 1 to Def.'s Original Mot. to Dismiss and already conventionally filed with the Court (doc. 23-1)); Am. Compl. ¶ 53.
[8] Audio recording, Ex. 1 at 1:28.

going to ask for the committee to recess for five minutes while we come into compliance with the rules."[9]

7.  As Senator McCay was reading these rules, Brown was holding one of the stickers in the air next to his cell phone.[10]

8.  Assistant Sergeant-at-Arms Darrell Griggs approached Brown and asked for the stickers.[11]

9.  Griggs told Brown that if he did not give him the stickers, Brown would need to leave the meeting.[12]

10.     Instead of complying with Griggs' request, Brown started asking Griggs questions.[13]

11.     Brown did not give Griggs the sticker.[14]

---

[9] Audio recording, Ex. 1 at 2:00; Am. Compl. ¶ 54.

[10] Video recording: Seth Dalton Body Camera (Mar. 1, 2022), at 0:01–0:45 (attached as Exhibit 2 to Def.'s Original Mot. to Dismiss and already conventionally filed with the Court (doc 23-1)).

[11] Video recording: Mikel Brown Cell Phone Video (Mar. 1, 2022), at 0:25 (attached as Exhibit 3 to Def.'s Original Mot. to Dismiss and already conventionally filed with the Court (doc 23-1)); Am. Compl. ¶ 56.

[12] Brown Video, Ex. 3 at 0:30; Am. Compl. ¶ 62.

[13] Brown Video, Ex. 3 at 0:20–1:18; Am. Compl. ¶¶ 59, 61, 65.

[14] Brown Video, Ex. 3 at 1:15; Am. Compl. ¶ 60, 67.

12.      Griggs then directed UHP officers to remove Brown from the meeting.[15]

13.      A UHP officer asked Brown to come to him. Brown did not comply.[16]

14.      UHP officers had to move four meeting attendants from their seats so the officers could approach Brown.[17]

15.      UHP officers approached Brown and again asked him several times to come talk with the officers. Brown continued to refuse.[18]

16.      Brown was then told he was under arrest for disrupting the meeting.[19]

17.      Brown still refused to leave with the officers, pushing the officers' hands away from his body.[20] He was then forcibly removed from the meeting and handcuffed.[21] During the removal, some of the other attendees of the committee meeting became visibly upset and agitated.[22]

---

[15] Brown Video, Ex. 3 at 1:18.
[16] Brown Video, Ex. 3 at 1:18–1:52.
[17] Brown Video, Ex. 3 at 1:45–2:10; Am. Compl. ¶ 69.
[18] Brown Video, Ex. 3 at 2:10–3:52; Am. Compl. ¶¶ 70–71.
[19] Brown Video, Ex. 3 at 3:52; Am. Compl. ¶ 74.
[20] Dalton Bodycam, Ex. 2 at 4:46–4:52.
[21] Dalton Bodycam, Ex. 2 at 4:40; Am. Compl. ¶¶ 80.
[22] Dalton Bodycam, Ex. 2 at 4:48–6:03; Am. Compl. ¶¶ 79, 82.

18.      Brown did not walk to the designated UHP squad room, either because he refused or was unable to do so, so he was carried by several UHP officers.[23]

19.      In the squad room, Brown's handcuffs were removed about 8 minutes after arriving.[24]

20.      Brown was evaluated by medical professionals because he claimed he was having a panic attack.[25]

21.      Brown was cited and released.[26]

22.      The citation was for disruption of a public meeting, a class B misdemeanor.[27] A person violates that section "if, intending to prevent or disrupt a lawful meeting … he obstructs or interferes with the meeting … by physical action, verbal utterance, or any other means." Utah Code § 76-9-103.

---

[23] Dalton Bodycam, Ex. 2 at 7:10–12:20; Am. Compl. ¶¶ 83–84.
[24] Videotape: Ernest Peterson Bodycam (Mar. 1, 2022), at 13:40 (attached as Exhibit 4 to Def.'s Original Mot. to Dismiss and already conventionally filed with the Court (doc. 23-1)).
[25] Peterson Bodycam, Ex. 4 at 45:00–54:30; Am. Compl. ¶¶ 89, 91.
[26] Peterson Bodycam, Ex. 4 at 55:10, 1:01:40; Am. Compl. ¶¶ 92–93.
[27] *See* Docket, *Salt Lake City v. Mikel Ray Brown*, Case No. 221400977 (attached as Exhibit 5 to Def.'s Original Mot. to Dismiss and already filed with the Court (doc. 23-2)).

23.     Brown alleges that, during the hearing, other individuals expressed their views by "speech in favor of or against proposed legislation," and "speech on clothing," but does not allege that anyone else was allowed to keep, display, distribute, or wear stickers not preexisting on surfaces.[28]

24.      After review, the prosecutor moved to dismiss the case, without prejudice.[29]

25.     Brown asserts that he plans to attend future senate and house committee meetings and is "now suffering and will continue to suffer irreparable injury based on the improper and undue chilling of his constitutionally protected rights under the First Amendment, his unequal treatment under the Fourteenth Amendment."[30]  Brown does not allege that he intends to distribute, display, or wear stickers into any such meeting.[31]

---

[28] Am. Compl. ¶ 97.
[29] *See id*.
[30] Am. Compl. ¶ 121.
[31] *Id.*

## LEGAL STANDARD

In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723.

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint and may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). This includes videos from an officer's body camera

11

"because they are referred to in the Complaint and central to many of Plaintiff['s] claims." *Estate of Harmon v. Salt Lake City*, 471 F. Supp. 3d 1203, 1211 n.22 (D. Utah 2020); *see also Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018).

The Individual Defendants also assert the defense of qualified immunity. Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial' [and was created] to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (further citations and quotations omitted)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citations and quotations omitted).

12

Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct…." *Pearson*, 555 U.S. at 231. If the plaintiff fails to satisfy any element of his burden, the court must grant the defendant qualified immunity. The Court may address only whether the alleged violation was clearly established, without determining whether a constitutional violation occurred when it grants qualified immunity. *Pearson*, 555 U.S. at 242.

The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). This is "especially important in the Fourth Amendment context," because it is "difficult for an officer to determine how the relevant legal doctrine[s]" "probable cause" and "excessive force" apply in a particular factual situation. *Mullinex*, 577 U.S. at 12; *see also District of Columbia v. Wesby*,138 S. Ct. 577, 590 (2018).

13

## LEGAL ARGUMENT

Brown asserts seven causes of action. Each should be dismissed against each defendant.

### 1. Claims against Sen. McCay should be dismissed because they are entitled to legislative immunity.

Plaintiff's claims against Senator McCay are based entirely on his alleged actions within the sphere of legitimate legislative activity.  Therefore, the doctrine of legislative immunity acts as an absolute bar, and the Court should dismiss all of Plaintiff's claims for damages asserted against Senator McCay.[32]

Utah has adopted the common law legislative immunity doctrine into its constitution through a Speech or Debate Clause.[33] William M. Howard, *Construction and Application of Federal and State Constitutional and Statutory Speech or Debate Provisions*, 24 A.L.R. 6th 255 (2007). Under this doctrine, "state and regional legislators are entitled to absolute immunity from liability under

---

[32] Specifically, Plaintiffs' First, Second, Third, and Fourth Claims, all of which are asserted under § 1983. *See* Amended Compl. ¶¶ 123-148. Plaintiffs' non-§ 1983 claims are not asserted against Senator McCay. *See* Amended Compl. ¶¶ 149–162.

[33] "Utah Const. art. VI, § 8. Utah's Speech or Debate Clause "parallels" the Speech or Debate Clause of the United States Constitution. *Riddle v. Perry*, 2002 UT 10, ¶ 8, 40 P.3d 1128, 1131–32.

§ 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Absolute legislative immunity "attaches to all actions taken in the sphere of legitimate legislative activity." *Id.* at 54 (quotations omitted).  And this absolute immunity applies not just to legislators, but also to a legislative employee who is engaged in legitimate legislative activity. *See Doe v. McMillan*, 412 U.S. 306, 312-313 (1973) ("Congressmen and their aides are immune from liability for their actions within the 'legislative sphere,….") (internal citation omitted).

Here, Brown's § 1983 claims against Senator McCay arise exclusively out of his actions within the sphere of legitimate legislative activity—namely, conducting an orderly Senate committee meeting to consider proposed legislation. *See Grave v. United States*, 408 U.S. 606, 625 (1972) (legislative acts are those that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation"); *see also Avila v. Est. of Kroogman*, No. 3-02CV851, 2006 WL 214032, at *3 (D. Conn. Jan. 27, 2006) (unpublished) ("A chairperson's acts to maintain the orderly and relevant public discussion during a legislative body's meeting furthers that body's investigation into public opinion of the meeting's subject matter. Thus, such acts are integral to

15

the legislative process."), *aff'd sub nom. Avila v. Witkowski*, 219 F. App'x 62 (2d Cir. 2007).

As chair of the committee deliberating that proposed legislation, according to Brown's own allegations, Senator McCay had a duty to "preserv[e] order during senate standing committee meetings."[34] Plaintiff's claims are based on alleged actions that Senator McCay took in fulfillment and furtherance of those duties, to which legislative immunity applies.

Legislative immunity applies "even though [the] conduct [of the legislator], if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe*, 412 U.S. at 312-13; *accord Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509-10 (1975). Thus, the fact that Plaintiff alleges infringement of his constitutional rights cannot overcome the absolute legislative immunity afforded to Senator McCay where, as here, their alleged actions where wholly within the legislative context.

---

[34] Am. Compl. ¶ 22.

For these reasons, the Court should dismiss, with prejudice, each of Brown's claims against Senator McCay.

### 2. Brown's federal constitutional claims should be dismissed.

Brown's First, Second, Third, and Fourth claims seek relief for alleged violations of the United States Constitution, actionable under 42 U.S.C. § 1983. These claims should be dismissed.  Brown fails to state legally sufficient claim under the First, Fourteenth, and Sixth Amendments.  And Brown's Fourth Amendment claim should be dismissed because the arresting officers had probable cause.  Additionally, the right not to be seized after a legislator confirmed that stickers were not allowed in the hearing room, being told that stickers were not allowed, refusing to give the stickers to law enforcement when asked, refusing to comply with lawful orders, and disrupting a committee room are not "clearly established," such that the Defendants are entitled to qualified immunity.

Finally, Brown's attempt to hold Sen. McCay and Col. Rapich liable as supervisors fails because there were no underlying constitutional violations, because Sen. McCay is not Sergeant-at-Arms Grigg's supervisor for purposes of § 1983, and because Brown has not pleaded plausible personal participation causing any constitutional violation.

17

**2.1    The Officers are entitled to qualified immunity on Brown's § 1983 claims.**

The Officer Defendants—Griggs, Dalton, Holley, Breuer, Daniels, and Peterson[35]—are entitled to qualified immunity on each of the § 1983 claims, because Brown does not state a constitutional violation, because the law as he contends is not clearly established, or both.

**2.1.1.    The False Arrest Claim.**

Brown's First Claim is for false arrest,[36] in violation of the Fourth Amendment to the U.S. Constitution. The Court should dismiss this claim against the Officers because probable cause supported the arrest, and, at minimum, no law clearly establishes that the Officers violated the constitution in this situation.

"[A]n arrest without probable cause that a crime has been committed violates the Fourth Amendment." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (cleaned up). However, "when an officer has probable cause to

---

[35] Plaintiff also seeks to hold Sen. McCay and Col. Rapich liable as supervisors.  Am. Compl. ¶ 125.  The supervisor liability claims are address separately in Section 2.2.
[36] Am. Compl. at 22–23.  In Brown's previous complaint, Brown alleged separate causes of action for excessive force and § 1983 false imprisonment. Those specific claims no longer appear.

18

believe a person committed even a minor crime in his presence, the … arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016) (cleaned up). It "requires only a 'fair probability,' a standard understood to mean something more than a 'bare suspicion' but less than a preponderance of evidence at hand." *United States v. Denton*, 775 F.3d 1214, 1217 (10th Cir. 2014) (citations omitted).

In addition, when a defendant raises a qualified immunity defense to a claim of false arrest under § 1983, "not only must the plaintiff demonstrate that the officer arrested her without probable cause … but also that it would have been clear to a reasonable officer that probable cause was lacking in under the circumstances …." *Koch,* 660 F.3d at 1241. "Under this framework, sometimes referred to as 'arguable probable cause,' even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Id.* (cleaned up).

The "precise scope" of Brown's right to be free "from an arrest without probable cause … uniquely depends on the contours of a state's substantive criminal law." *Kaufman v. Higgs*, 697 F.3d 1297, 1300–01 (10th Cir. 2002).

In this case, Brown was charged with disrupting a public meeting as prohibited by Utah Code section 76-9-103. A person violates that section "if, intending to prevent or disrupt a lawful meeting … he obstructs or interferes with the meeting … by physical action, verbal utterance, or any other means." Utah Code § 76-9-103.

Utah courts have not provided any significant guidance to the interpretation of this section. The Utah Supreme Court upheld a predecessor statute against a challenge for vagueness in a case with only moderately similar facts. *State v. Chima*, 463 P.2d 802, 804 (Utah 1970).

Likewise, decisions from other courts provide little guidance. "What constitutes an interruption or disturbance of a public meeting cannot easily be defined and must be determined on a case-by-case basis." 27 C.J.S. *Disturbance of Public Meetings* § 4 (Supp. 2022). Conduct "that is contrary to accepted usages and customs of a given meeting and interferes with its successful functioning is a disturbance." *Id.* But factors including the nature of the meeting, the effect of the

20

conduct, whether the defendant knew or had reason to know that the conduct violated a meeting's standard, all affect the determination. *Id.*

In general, when restrictions on participation at a public meeting are "reasonable and viewpoint neutral," and the violation of those restrictions causes actual disruption of the meeting, the restrictions are constitutional and expulsion of an offender permissible. *See Kindt v. Santa Monica Rent Cntrl. Bd.*, 67 F.3d 266, 271 (9th Cir. 1995). And when an officer arrests someone in violation of the rules of the meeting and in response to the request of the leaders of the meeting to eject the person, at least arguable probable cause exists to support the offending person's arrest. *See Norse v. Santa Cruz,* 629 F.3d 966, 978 (9th Cir. 2010) (en banc); *Heaney v. Roberts*, 147 F. Supp. 3d 600, 611 (E.D. La. 2015).

In *Norse*, an en banc panel of the Ninth Circuit concluded that a city's rules regarding disruptive conduct, construed to require the ejection of a person who gave a silent "Nazi salute" in protest to a Mayor's decision, were likely not viewpoint neutral and violated the First Amendment as-applied. *Norse*, 629 F.3d at 976. However, the court affirmed the grant of qualified immunity to the officer who arrested the plaintiff, because the plaintiff violated the Rules of Decorum in existence at the time. *Id.* at 978. The court concluded that "a reasonable officer

21

could have believed that probable cause existed to arrest" the plaintiff for California's statute prohibiting the disturbance of a public assembly or meeting.

And in *Heaney v. Roberts*, the court granted qualified immunity to an officer who removed a speaker from a public meeting at the behest of the chair of a parish counsel, after a heated back-and-forth between the speaker and the chair. *Heaney*, 147 F. Supp. 3d at 611. The court concluded that the officer was entitled to qualified immunity because no reasonable officer "would have understood that acting in obedience to a presumptively valid request by the council chairman following an argumentative exchange" would have violated the plaintiff's First or Fourth Amendment rights. *Id.* at 610, 611. The Fifth Circuit affirmed, concluding that the officer did not need to "second-guess" the council chair and that the officer's actions "as sergeant-at-arms were not objectively unreasonable …." *Heaney v. Roberts*, 846 F.3d 795, 804 (5th Cir. 2017).

In this case, Brown admits that he was aware that there was a "no-stickers" policy at the committee hearing. He heard the chair of the committee express the rule again and note that there were people "violating this rule at the moment."[37]

---

[37] Audio recording, Ex. 1, at 2:00.

He was continuing to violate the rule while the chair was speaking.[38] He refused an order to relinquish the stickers.[39]

At that time, the officers had reason to believe that that Brown violated a reasonable decorum policy. The chair of the committee stopped the proceedings, and therefore Brown's actions actually disrupted the meeting. Brown's continued display of a sticker during the chair's notice, and his refusal to relinquish the sticker, provide the officers with an "entirely reasonable inference" that Brown intended to disrupt the meeting. *Wesby*, 138 S. Ct. at 586. These facts, in the totality of the circumstances, are sufficient to demonstrate a fair probability that Brown had committed the offense of disrupting a public meeting, and therefore probable cause was present. *Id.* at 588.

Alternatively, the officers in the hearing room had at least arguable probable cause to believe that Brown had violated Utah law. They had cause to remove him from the meeting, *see Heaney*, 147 F. Supp. 3d at 611, and they could lawfully arrest him for the violation of the statute. *Atwater v. City of Lago Vista,*

---

[38] Dalton Bodycam, Ex. 2, at 0:01–0:45.
[39] Mikel Brown Video, Ex. 3, at 0:25–1:38.

532 U.S. 318, 354 (2001) (holding that an officer may arrest a defendant who has "committed even a very minor criminal offense in his presence … without violating the Fourth Amendment").

It is Brown's burden to demonstrate that the violation as he asserts it was clearly established at the time. *E.g., Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1235 (10th Cir. 2022). But this he cannot do. There is no case on point from the Supreme Court or Tenth Circuit, or the weight of authority from other circuits, putting every reasonable officer on notice that the arrest in these circumstances violates the Fourth Amendment. *See id.* (articulating the plaintiff's burden). Instead, there is a "caselaw void" that clearly establishes any legal principle to provide the officers "fair warning" in this situation. *Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015). The claim should be dismissed.

### 2.1.2.    The First Amendment Claim.

Brown's Second Claim is for retaliation under the First and Fourteenth Amendments.[40] This claim should be dismissed against the Officer Defendants because Brown's has not and cannot allege that the Officer Defendants took any

───────────────

[40] Am. Compl. at 24.

action in retaliation for Brown's speech and because probable cause existed for the arrest.

To state a claim for retaliation protected by the First Amendment, a plaintiff must plead and prove three elements:

> (1) that he was engaged in a constitutionally protected activity; (2) that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct.

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 11197, 1212 (10th Cir. 2000)) (cleaned up).  The third element's causation requirements are particularly stringent:

> [A] plaintiff must establish a "causal connection" between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.  Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019).

25

Additionally, "a First Amendment retaliation claim based on a false arrest requires a separate 'threshold showing'—generally a plaintiff mush show a false arrest" by "pleading and proving the absence of probable cause for the arrest." *Hinkle*, 962 F.3d at 1227 (quoting *Nieves*, 139 S. Ct. at 1724 (2019)) (cleaned up).

The threshold requirement does not apply if a plaintiff presents "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. As an example, if a plaintiff was arrested for jaywalking while engaging in protected speech, but no one else ever is arrested, then the threshold may not apply. *Id.*

In this case, Brown's First Amendment retaliation claims should be dismissed because probable cause supported his arrest, for the reasons stated in Section 2.1.1, above. As to the exception, Brown makes conclusory allegations of viewpoint discrimination,[41] but never alleges any facts to show that he was

---

[41] *E.g.*, Am. Compl. ¶ 130. Brown also alleges that his First Amendment rights were violated because he wore a T-shirt with a "political message" "WE THE PEOPLE" on it.

unfairly targeted because of his speech and that others were not.  He does not

contend that other people who had different stickers that did not display a

political message, or people who refused to provide stickers to officers despite

warnings were not arrested, for example.  *See also Sexton v. City of Colo. Springs,*

*Colo.*, No. 20-cv-2248-WJM-KMT, 2022 WL 168714, at *9–10 (D. Colo. Jan. 19,

2022) (unpublished) (granting summary judgment on First Amendment

retaliatory arrest claim where Defendants had probable cause and plaintiff had

not demonstrated that the defendants "have not arrested an individual engaged in

similarly obstructive speech").Accordingly, Brown fails to meet the threshold

requirement, and the claim must be dismissed. *Nieves*, 139 S. Ct. at 1724; *Hinkle,*

962 F.3d at 1227.

Notwithstanding the threshold issue, Brown's allegations of causation are

conclusory. He was targeted because he failed to give up or put away stickers, not

because of what he said, or what the stickers said.  The lack of animus, and any

sort of causal connection, dooms the claim.

---

Am. Compl. ¶¶ 105–06.  But there are no allegations in the complaint, and no facts
found in the videos, that any Defendant took any action because of his shirt—all adverse
actions were related to his possession, display, and failure to relinquish, the stickers.

Finally, the Court may dismiss the claim because the law is not clearly established.  The law is not clearly established that following a chair's instruction related to a facially neutral conduct policy violates the constitution. *See Norse,* 629 F.3d at 978; *Heaney*, 147 F. Supp. 3d at 611 . And published judicial opinions from the Tenth Circuit—the only "valid interpretive source of the content of clearly established law" say no more about the protection of the First Amendment right. *Frasier v. Evans*, 992 F.3d 1003, 1015, 1024 (10th Cir. 2021) (concluding that a conspiracy claim based on a First Amendment retaliation claim fails because the First Amendment retaliation claim was not clearly established). Regardless of the prong, the claim should be dismissed.

### 2.1.3.    The "Class of One" Claim.

Brown's third claim seeks to hold Defendants liable for "arbitrarily, capriciously, and without rational basis, treated Plaintiff differently from other

attendees in the room subject to the same rules, allegedly in violation of the Fifth[42] and Fourteenth's Amendment's guarantees of equal protection.[43]

"The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (citations and quotations omitted). While an equal protection claim often examines whether *classes* of people are being treated equally, "the equal-protection inquiry does not always related to groups." *Id.* Instead a plaintiff may state a "class of one" equal protection claim if the plaintiff can plead and prove that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment". *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Courts in the Tenth Circuit "approach[] class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216

---

[42] The Fifth Amendment to the U.S. Constitution does not contain an equal protection clause, and (except for the Takings Clause) does not apply to actions under color of state law. *Kosessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013) (analyzing the application of the Fifth Amendment's Due Process Clause to the states).
[43] Am. Compl. ¶ 136.

(10th Cir. 2011) (citations and quotations omitted). Accordingly, a plaintiff must surpass a "substantial burden" to proceeding with a class-of-one-claim. *Id.* at 1217.

To make a claim, a plaintiff must show that (1) "others similarly situated *in all material respects* were treated differently"; and (2) "the difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity." *Kan. Penn Gaming,* 656 F.3d at 1216 (10th Cir. 2011) (emphasis added).

On the first element, a plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the [allegedly] favored class." *Jennings v. Stillwater,* 383 F.3d 1199, 1214 (10th Cir. 2004). On the second, if there are a "host of variables" involved in the deployment of government action, then it will be nearly impossible for the court to conclude that an agent's decisions are "wholly arbitrary and lacking in legitimate justification." *Id.* at 1212.

In this case, Brown does not attempt to identify any similarly situated persons that were treated differently. He refers to Griggs's veteran's pin that also displayed the flag of Ukraine and other "political and non-political related

30

speech,[44] but those people are not similarly situated because he doesn't allege that they were disturbing the meeting or refusing to comply.  He mentions that others were wearing a shirt with "commercial speech" that other people were wearing,[45] but those people are not similarly situated because he does not allege that they were violating (or not) the sticker ban after being told to remove them.[46]  And if Brown was treated differently from others at the meeting, his refusal to cooperate and subsequent interactions with the police provided a rational basis for the officers to take the actions they did.  *See A.M.*, 830 F.3d at 1168; *Horocofsky v. City of Lawrence, Kan.*, No. 20-2529-EFM, 2022 WL 1421554, at *21 (D. Kan. May 5, 2022) (unpublished).

Because Brown cannot plead facts establishing either element, the claim should be dismissed.

### 2.1.4.   The Sixth Amendment Claim.

Brown's Fourth Claim, based on the Sixth Amendment, should be dismissed because "the Sixth Amendment's protection does not come into play until the

---

[44] Am. Compl. ¶ 97
[45] *Id.*.
[46] *Cf.* Am. Compl. ¶ 30.

government has committed itself to prosecution." *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987) and the Sixth Amendment's protection of the "accused" in a "criminal prosecution" "to be informed of the nature and cause of the accusation" only attaches after the onset of adversary criminal proceedings. U.S. Const. amend. VI; *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). The Sixth Amendment does not require an officer to identify the charges at the time of detention or booking. *See Rudd v. Graves*, No. 01-3264, 22 F. App'x 954, 956 (10th Cir. Oct. 24, 2001) (unpublished). Because that did not come to fruition (and because Defendants had no role in it), the claim should be dismissed.

Brown's allegation that the officers violated the Sixth Amendment by refusing to take Brown "without unnecessary delay to the magistrate in the district court" similarly does not state a claim. The *Fourth* Amendment requires that if someone is arrested without a warrant, the suspect be presented to a judicial officer "to provide a fair and reliable determination of probable cause for any significant pretrial restraint on liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Brown was cited and released—there was no need to present Brown to a magistrate to make an immediate determination of whether he should continue in custody.

The Fourth Claim, based on the Sixth and Fourteenth Amendments, should be dismissed.

## 2.2 Brown's supervisor liability claims should be dismissed.

Throughout his complaint, Brown seeks to hold Sen. McKay liable for the constitutional violations alleged to have been committed by Griggs, and Col. Rapich liable for the federal constitutional violations alleged to have been committed by the Highway Patrol officers.  These claims should be dismissed. First, Brown has not pleaded facts showing that Sen. McCay is actually Grigg's supervisor empowered to create policies relevant to the constitutional violation or to train or supervise his activities.  Second, Brown has not successfully pleaded any underlying constitutional violations. Third, Brown has not articulated any non-conclusory affirmative links between Col. Rapich and any underling constitutional violation to subject him to liability.

"Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006). To establish supervisor liability, then, a plaintiff must plead and prove facts showing "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued

operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021).

As a threshold, the supervisor liability claims against Sen. McCay should be dismissed, because Brown cannot assert supervisor liability against someone who is not a supervisor. *See Chavez v. Ill. State Police*, 251 F.3d 612 , 651 (7th Cir. 2001). Brown alleges that Senator McCay has a responsibility to maintain order during hearings, that he can "request assistance" from Griggs in that process, and that Griggs in charged with maintaining security and enforcing rules.[47] And Brown makes conclusory allegations that McCay failed to supervise Griggs.[48] But nowhere does Brown allege facts showing that that Sen. McCay is actually Griggs' supervisor, in Sen. McCay's "chain of command." *Chavez*, 251 F.3d at 651 (holding no supervisor liability for officer who trained other officer but was not within the chain of command).

---

[47] Am. Compl. ¶¶ 18, 21, 22.
[48] *E.g.*, Am. Compl. ¶ 110.

This is little different from the relationship of a district attorney to an officer. *See Harwell v. Campbell*, No. 519CV00027KDBCK, 2020 WL 594107, at * 4 (W.D.N.C. Feb. 6, 2020) (unpublished). While they may both have obligations to uphold the law, and a district attorney may even offer advice or instruction to police officers during investigations, that does not make a district attorney the police officer's supervisor for § 1983 purposes. *Id.*

Second, for the reasons stated above, Brown has not pleaded or proved a constitutional violation.  Therefore, the supervisor liability claim fails.

Finally, Brown has not pleaded sufficient facts to state a claim against Col. Rapich.  A plaintiff must plead more than conclusions for each of the three elements.  In this case, Brown does not identify any particular policy that was implemented and not followed. He alleges that Col. Rapich "permitted and/or authorized" the disruption of lawful meeting statute "for the purpose of discriminating" and was "deliberately indifferent in the supervision and training" of the officers and failed to "promulgate and/or enforce regulations … vesting less discretion in state troopers … permitting agents … to make unlawful distinctions based on the content or viewpoint of speech, and or… substantially burdening

Plaintiff's exercise of his speech."[49] These allegations are mere conclusions "that there must be a bad policy,  there must be no policy, or there must be insufficient training."  This is insufficient to state a supervisory liability claim. *Smith*, 987 F.3d at 911–12.  It is also insufficient for Brown's obligation to plead and prove the proper mental state.  *Id.* (holding that an allegation that supervisors "were aware that the policies and procedures they created … resulted in grossly deficient medical care" was insufficient); *accord Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1287 (D. Utah 2019) (dismissing supervisory liability claim when there were "no non-conclusory allegations" about a specific policy or state of mind).

All § 1983 claims brought against Sen McCay or Col. Rapich as supervisors should be dismissed.

### 3.  Brown's state-law claims should be dismissed

The Court should also dismiss the Fifth Claim–alleging common-law false imprisonment against the Officers, the Sixth Claim—alleging malicious prosecution against the Officers, and the Seventh Claim—alleging aggravated assault, battery, and "harassment."

---

[49] Am. Compl. ¶ 111–13.

First, the claims are barred by the Governmental Immunity Act of Utah. The Act immunizes the State *and* its employees for any injury arising out of assault and battery or false imprisonment. Utah Code § 63G-7-201(4)(b).

Even if the Court were to conclude that the Immunity Act does not protect the individual officers, *see* Utah Code § 63G-7-201(3)(c)(i), the claims still fail.

"False imprisonment occurs whenever there is an unlawful detention or restraint of another against his will." *Lee v. Langley*, 2005 UT App 339, ¶ 19, 121 P.3d 33, 38 (cleaned up). And malicious prosecution requires a lack of probable cause. *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 959 (Utah Ct. App. 1989). As stated above, because the officers acted lawfully and with probable cause, these tort claims may be dismissed.

As to the battery claim, "[w]here a plaintiff brings both a § 1983 excessive force claim and a common law claim for assault and battery, the court's determination of the reasonableness of the force used with respect to the § 1983 claim controls its assault and battery analysis." 6 Am. Jur. 2d *Assault and Battery* §

96. For the reasons Brown's § 1983 excessive force claim fails that Defendants stated in their original Motion to Dismiss,[50] his common law assault claim fails.

**4. Brown's claim for equitable relief should be dismissed.**

Finally, the Court should dismiss Brown's claims for equitable relief—declaratory judgment and injunctions.

While Brown's request for injunctive relief has more meat than in his first complaint, it still improperly seeks declaratory relief about events happening in the past,[51] *Raiser v. Kono*, No. 06-4243, 245 F. App'x 732, 735–36 (10th Cir. July 5, 2007) (unpublished) (citing *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995)) and requires the Court "to answer a hypothetical question or … [provide the plaintiff] the 'emotional satisfaction' of a ruling that the defendants wronged him." *Hawver v. Nuss*, No. 5:14-cv-04084-DGK, 2015 WL 1470397, at * 3 (D. Kan. March 31, 2015) (unpublished). It is therefore an improper request for declaratory relief, and subject to dismissal.

Furthermore, Brown's requested injunctive relief still is little more than a request for Defendants to follow the law and does not meet Rule 65(d)'s

---

[50] Doc. 23, § 2.2.2, at 34.
[51] Am. Compl. ¶ 163.

requirement that the injunction describe with reasonable detail the activities enjoined.[52] *Fed. R. Civ. P. 65(d)(1)*; *Shook v. Bd. of Cnty. Commr's of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008).  Brown's allegation of future injury is that he "anticipates attending future senate and house standing committee meetings."[53] But he does not allege that the ban on stickers is still in effect, much less that he intends to wear or display stickers in violation of a ban, which will affect his first amendment rights.  As a result, his injury is hypothetical and based only on one past incident, which cannot support a request for injunctive relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *Smith v. Bd. of Regents of N.M.*, No. 10-cv-00518 MV/WDS, 2011 WL 13289837, at *4 (D.N.M. Mar. 29, 2011) (unpublished).

Brown does not allege any threat of danger of sustaining a direct injury that is real and immediate. And his open-ended requests do little more than ask Defendants to obey the law. Therefore, his request for injunctive relief is improper.

---

[52] Am. Compl. at C, D.
[53] Am. Compl. ¶ 120.

**CONCLUSION**

For these reasons, Defendants request that the Court grant their motion,

and dismiss the case with prejudice.


RESPECTFULLY SUBMITTED THIS 25h day of October, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/__*Kyle J. Kaiser*_____

KYLE J. KAISER

Assistant Utah Attorney General

Attorney for Defendants

40

**WORD COUNT CERTIFICATION**

I, Kyle J. Kaiser, certify that this Motion to Dismiss contains 7,435 words including the sections listed in DUCivR 7-1(a)(5)(A) and excluding the sections listed in DUCivR 7-1(a)(5)(B) and complies with DUCivR 7-1(a)(4).


Dated:          October 25, 2022          Signed:   /s/ *Kyle J. Kaiser*

                                                  Kyle J. Kaiser

## CERTIFICATE OF MAILING

I certify that on this 25th day of October, 2022, I electronically filed the foregoing, **DEFENDANTS' MOTION TO DISMISS** using the Court's electronic filing system. Additionally, courtesy copies of this motion and the attachments were emailed to the plaintiff at mikebrown@reagan.com, and a true and correct copy of the foregoing was subsequently placed in outgoing, United States mail, postage prepaid, to the following:

Mikel R. Brown
2942 Foss Circle
Bountiful, UT 84010


/s/    *Kyle Kaiser*
Kyle Kaiaser


42