NATHAN SKEEN (12662)
DANI CEPERNICH (14051)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
Telephone: (801) 521-9000
nrs@scmlaw.com
dnc@scmlaw.com

KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
kkaiser@agutah.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| MIKEL RAY BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>DARRELL GRIGGS, et al.,<br><br>Defendants. | **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 1:22-cv-00091<br><br>Judge Robert J. Shelby<br><br>Magistrate Cecilia M. Romero |

**TABLE OF CONTENTS**

ARGUMENT ........ 1

1. DEFENDANTS' MOTION IS PROCEDURALLY PROPER. ........ 1

 1.1. The Court need not covert the motion to one for summary judgment. ........ 1

 1.2. Defendants' motion is not an impermissible successive motion. ........ 2

2. THE CLAIMS AGAINST SENATOR MCCAY SHOULD BE DISMISSED BECAUSE HE IS ENTITLED TO LEGISLATIVE IMMUNITY. ........ 3

3. MR. BROWN'S § 1983 CLAIMS SHOULD BE DISMISSED. ........ 4

 3.1. Mr. Brown has failed to state a claim for violation of his constitutional rights. ........ 4

 3.2 Defendants are entitled to qualified immunity under the second prong of that analysis. ........ 7

 3.3 Mr. Brown has failed to plead a basis for supervisory liability against Senator McCay or Colonel Rapich. ........ 8

4. MR. BROWN'S STATE LAW CLAIMS SHOULD BE DISMISSED. ........ 10

 4.1. Defendants are entitled to immunity under the GIA. ........ 10

 4.2. Mr. Brown's state law claims fail to state a claim. ........ 12

5. MR. BROWN'S CLAIM FOR EQUITABLE RELIEF SHOULD BE DISMISSED. ........ 13

CONCLUSION ........ 14

Defendants submit this reply memorandum supporting their motion to dismiss Plaintiff Darrell Griggs's amended complaint (Dkt. No. 34).

## ARGUMENT

### 1. DEFENDANTS' MOTION IS PROCEDURALLY PROPER.

Mr. Brown raises two procedural challenges to Defendants' motion: (a) that it improperly relies on materials outside of the amended complaint and therefore must be converted to one for summary judgment; and (b) that it constitutes an impermissible second motion under Rule 12(b) and must be brought as a motion for judgment on the pleadings under Rule 12(c), but would be premature as the pleadings have not closed. Defendants' motion is proper in both respects.

#### 1.1. The Court need not covert the motion to one for summary judgment.

Mr. Brown argues the Court must covert Defendants' motion into one for summary judgment because certain of the facts included in the motion are taken from footage of two body cameras (Dkt. Nos. 23-1). Mr. Brown further argues the motion does not satisfy the evidentiary requirements of Rule 56. The Court, however, need not covert the motion.

"In general, a motion to dismiss should be converted to a summary judgment motion if a party submits, *and the district court considers*, materials outside the pleadings." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (cleaned up, emphasis added). Although Defendants maintain the Court could consider the two body camera videos cited in the motion, given they are central to Mr. Brown's complaint and implicitly referenced therein, *see id.*,[1] the

[1] "[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (cleaned up).

Court can resolve the motion without doing so. Those videos were cited in support of six paragraphs in the statement of relevant facts: ¶¶ 10 and 17–21. Each, however, is reflected in the allegations of the amended complaint, and some in video Mr. Brown incorporated by reference.

Mr. Brown's allegations include that he did not comply with Assistant Sergeant Griggs's request to give him the stickers, but instead asked Assistant Sergeant Griggs questions (Relevant Fact ¶ 10). (Am. Compl. [Dkt. No. 25] ¶¶ 30, 32, 34, 56–67.) They include that Mr. Griggs he was forcibly removed from the meeting and handcuffed while other participants became agitated (Relevant Fact ¶ 17), and that he was carried to the squad room (Relevant Fact ¶ 18). (Am. Compl. [Dkt. No. 25] ¶¶ 71–84.) Some of this is likewise depicted in the video Mr. Brown himself cites and incorporates by reference. (*Id.* ¶ 56 (citing video titled, "Infuriating! Senate handcuffs man for "We the People" T-shirt and "Yes HB60" sticker").) According to Mr. Brown's allegations, the handcuffs were ultimately removed (Relevant Fact ¶ 19),[2] and he was evaluated by medical personnel because he was having a panic attack (Relevant Fact ¶ 20). (Am. Compl. [Dkt. No. 25] ¶¶ 86, 89, 91.) And, Mr. Brown alleged he was cited and released (Relevant Fact ¶ 21). (Am. Compl. [Dkt. No. 25] ¶¶ 92–93.)

Because the videos are not critical to and do not alter the bases for Defendants' motion, the Court can exclude them from consideration. This resolves Mr. Brown's procedural challenge.

**1.2. Defendants' motion is not an impermissible successive motion.**

Mr. Brown argues Defendants' motion is improper under Rule 12(g)(2), which provides, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not

[2] Mr. Brown alleges the handcuffs were removed after "approximately half an hour" rather than the eight minutes depicted in the body camera footage. None of Defendants' arguments, however, turns on the amount of time Mr. Brown was handcuffed.

make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). It appears Mr. Brown believes this limitation applies because Defendants moved to dismiss his original complaint (Dkt. No. 23).

Rule 12(g)(2) has no applicability here. In response to Defendants' original motion to dismiss, Mr. Brown filed an amended complaint as allowed by Rule 15(a)(1)(B). This mooted Defendants' original motion to dismiss. (*See* Order Denying as Moot [Dkt. No. 33].) The present motion seeks dismissal of the *amended* complaint. It is not a successive motion under Rule 12(g)(2); there has been no prior motion to dismiss that complaint.

**2. THE CLAIMS AGAINST SENATOR McCAY SHOULD BE DISMISSED BECAUSE HE IS ENTITLED TO LEGISLATIVE IMMUNITY.**

Defendants moved to dismiss the claims against Senator McCay on the basis he is entitled to legislative immunity. In response, Mr. Brown appears to argue that Senator McCay was not acting within the "sphere of legislative activity," such that he is not entitled to immunity. The cases on which Mr. Brown relies, however, do not support this assertion. None address whether conducting an orderly Senate committee meeting to consider proposed legislation falls within the sphere of legislative activity. Rather, each involves evaluation of whether specific decisions were legislative, or executive or administrative in nature.

As explained in Defendants' motion, actions like Senator McCay's have been recognized as integral parts of the legislative process. (Mot. [Dkt. No. 34] at 15–16.) *See also Massie v. Pelosi*, 590 F. Supp. 3d 196 (D.D.C. 2022) (holding "actions taken by the Speaker, the Sergeant-at-Arms, and the Chief Administrative Officer in the enforcement of the House's mask policy and the issuance of fines for violations of that policy pursuant to House Resolution 38" are actions "regulating the very atmosphere in which lawmaking deliberations occur," and therefore "concern

the direct business of passage or rejection of proposed legislation"); *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 631 (1st Cir. 1995) ("Where, as here, a legislative body adopts a rule, not invidiously discriminatory on its face that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties." (cleaned up)). Mr. Brown has not established otherwise.

Notably, Mr. Brown recognizes that Senator McCay had the obligation to "preserv[e] order during senate standing committee meetings and may request assistance from the sergeant-at-arms . . . or the Utah Highway Patrol." (Am. Compl. [Dkt. No. 25] ¶ 22.) *See also* Utah Senate Rules SR3-2-301 ("The chair shall preserve order and decorum during standing committee meetings by: (a) controlling outbursts and demonstrations; and (b) ensuring that committee members, presenters, witnesses, and visitors act in a dignified and respectful manner.").

**3. MR. BROWN'S § 1983 CLAIMS SHOULD BE DISMISSED.**

Defendants moved to dismiss Mr. Brown's § 1983 claims (first–fourth causes of action) on the bases (a) Mr. Brown failed to plead a violation of any of the identified constitutional rights; (b) the Defendants are entitled to qualified immunity under the second prong of that analysis; and (c) Mr. Brown failed to plead supervisory liability of Senator McCay and Colonel Rapich.

**3.1. Mr. Brown has failed to state a claim for violation of his constitutional rights.**

Defendants moved to dismiss Mr. Brown's § 1983 claims on the basis he has failed to plead a violation of any of the identified constitutional rights, entitling Defendants to qualified immunity under the first prong of that analysis. Mr. Brown has not established otherwise.

*3.1.1. False Arrest*

Defendants argued Mr. Brown's false arrest claim fails to state a claim because probable cause existed; namely that Mr. Brown violated Utah Code Section 76-9-103. Mr. Brown did not directly address this argument. Instead, he asserts"a determination of probable cause must be made by someone independent from the arresting officers and prosecution," and maintains his arrest was unlawful because he was not brought before a magistrate as required by Section 77-7-23.

Mr. Brown, however, was not subjected to a custodial arrest and significant pretrial restraint on liberty. Instead, he was detained, cited, and released. (Am. Comp. [Dkt. No. 25] ¶¶ 92–93.) *State v. Harmon*, 910 P.2d 1196, 1200–01 & n.5 (Utah 1995) (distinguishing between a "custodial arrest," which includes the use of the term in Section 77-7-23 and an "arrest" that is "a seizure or detention, not a formal, custodial arrest"). Where, as here, the crime at issue is a misdemeanor, this is allowed as an alternative to arresting an individual and presenting him to a magistrate judge for a probable cause determination. Utah Code § 77-7-18(1) ("Any person subject to arrest or prosecution on a misdemeanor charge may be issued and delivered a citation that requires the person to appear at the court of the magistrate within territorial jurisdiction."). As the Utah Supreme Court has explained, Sections 77-7-18 and -23, "allow[] police officers, at their discretion, to either cite or arrest for [misdemeanor] offenses committed in their presence." *State v. Harmon*, 91 P.2d 1196, 1201 (Utah 1995). Because Defendants, in their discretion, elected the former, Mr. Brown was not required to be brought before a magistrate.

*3.1.2. First Amendment*

Defendants argued Mr. Brown has failed to plead a First Amendment retaliation claim based on his arrest (detention) because he cannot make the "threshold showing" of an absence of

probable cause, and the exception to that requirement does not apply because there is no "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," *Nives v. Bartlett*, 139 S.Ct. 1715, 1724, 1726 (2019). In response, Mr. Brown argues that he was "singled out and retaliated against" for "question[ing] Defendant GRIGGS' motives" and asking about "the law that was supposedly being enforced." (Opp. [Dkt. No. 35] at 11.)

While this argument makes clear why Mr. Brown believes he was retaliated against, it does not address the issues identified in Defendants' motion. It says nothing about the probable cause to arrest Mr. Brown. And, it fails to establish—let alone with any reference to allegations made in the amended complaint—there is "objective evidence" that others who refuse to comply with Senate rules regarding order and decorum, including requests to cease particular violative activity, have *not* been arrested. The amended complaint contains no such allegations.

*3.1.3. "Class of One" Equal Protection*

Defendants argued Mr. Brown has failed to plead either of the two elements of a class of one equal protection claim: (1) "that others, similarly situated in every material respect were treated differently"; and (2) "this difference in treatment was [objectively] without rational basis, that is, the government action was irrational and abusive, wholly unrelated to any legitimate state activity." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (cleaned up). Mr. Brown's opposition appears to conflate this argument with the argument regarding his First Amendment claim. (*See* Opp. [Dkt. No. 35] at 11–12.) As a result, the only argument directly responsive to Defendants' argument regarding the class of one equal protection claim is Mr. Brown was "singled out . . . in retaliation to the questioning [he] had of Defendant GRIGGS." (*Id.* at 11.)

This, however, fails to satisfy the first element, as Mr. Brown still has not identified any other individuals who were "similarly situated in every material respect" and were treated differently. If anything, Mr. Brown's argument—which focuses on a *difference* between himself and others in attendance (his questioning of Assistant Sergeant Griggs)—highlights the fatal flaw in the claim. Because Mr. Brown has not identified any similarly situated individuals, he cannot satisfy the second element requiring that there be no rational basis for the different treatment; no different treatment between similarly situated individuals has been alleged.

*3.1.4. Sixth Amendment*

Defendants argued Mr. Brown cannot state a Sixth Amendment claim because Mr. Brown was never subject to adversarial criminal proceedings and, contrary to his assertions, he was not required to be brought before a magistrate for a probable cause determination. In response, Mr. Brown has argued exclusively that he was "in custody" and can therefore maintain his claim. (Opp. [Dkt. No. 35] at 12.) Defendants' arguments, however, did not hinge on whether or not Mr. Brown was "in custody." He has not provided any authority establishing that the Sixth Amendment was triggered in this case or that his Sixth Amendment rights were violated.

**3.2 Defendants are entitled to qualified immunity under the second prong of that analysis.**

Defendants argued Mr. Brown's § 1983 claims should be dismissed for the alternative reason that the law was not clearly established, such that Defendants are entitled to qualified immunity under the second prong of that analysis. Mr. Brown did not directly respond to that argument. And, he has failed to meet his "heavy . . . burden," *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005), of "identify[ing] an on-point Supreme Court or published Tenth Circuit decision" or showing "the clearly established weight of authority from other courts . . . have found

the law to be as the plaintiff maintains," *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). *See also Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *Rojas v. Anderson*, 727 F.3d 1000, 1005–06 (10th Cir. 2013) ("Plaintiff might well have been able to satisfy us that Defendants' actions violated his clearly established rights. However, given the sparsity of Plaintiff's argument and his failure to point to any authority to support his claims, both here and in the district court, Plaintiff, through his counsel, has simply failed to carry the burden assigned to him by law." (cleaned up)).

While Defendants recognize Mr. Brown is proceeding pro se, this does not relieve him of his burden. As the Tenth Circuit has explained, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Indeed, it has affirmed dismissal of a § 1983 claim under the second prong of the qualified immunity analysis where the pro se plaintiff "cited Supreme Court and Tenth Circuit cases" but those cases did "not clearly establish a constitutional violation on facts even remotely similar to [the defendant's] alleged conduct" and it was not "obvious from prior case law establishing the contours of the right that [the defendant's] actions would violate [the plaintiff's] First Amendment right." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir 2019).

### 3.3 Mr. Brown has failed to plead a basis for supervisory liability against Senator McCay or Colonel Rapich.

Defendants argued as an alternative basis to dismiss the claims against Senator McCay and Colonel Rapich that Mr. Brown has not pled a basis for supervisory liability against either of them. Specifically, with respect to Senator McCay, there are no allegations establishing that he is the

supervisor of Assistant Sergeant Griggs; and, with respect to Colonel Rapich, that there are no allegations of the requisite personal involvement. In response, Mr. Brown argues that his allegations and Senate Rule 1-4-202 establish Senator McCay is Assistant Sergeant Griggs's supervisor and he has sufficiently pled personal involvement and deliberate indifference by Colonel Rapich because he "failed to act on the criminal complaint" Mr. Brown submitted "and failed to reprimand the Defendant officers." (Opp. [Dkt. No. 35] at 14.)

With respect to Assistant Sergeant Griggs, neither Mr. Brown's allegations nor Rule 1-4-202 establish a basis for supervisory liability. The allegations on which Mr. Brown relies provide:

> 18. Among other things, the Chair of Senate Standing Committees with the Utah State Senate are tasked with the following: "The chair shall ensure the integrity of the standing committee process by enforcing legislative rules and parliamentary procedure without delay." *Utah Legislative Rule* SR3-2-301.
>
> . . .
>
> 20. Upon information and belief, Defendant GRIGGS was, and all relevant times herein, appointed to be the sergeant-at-arms who was assigned to the senate revenue and taxation standing committee on the day in question.
>
> 21. Among the duties of the sergeant-at-arms, "the sergeant-at-arms and the employees under the sergeant's direction shall: maintain security; enforce the Senate Rules and other legislative rules at the direction of the presiding officer or the Senate; and provide other service as requested by the secretary of the Senate or the president." *Utah Legislative Rule* SR1-4-202.

(Am. Compl. [Dkt. No. 25] ¶¶ 18, 20–21.) These allegations and the cited rules do not establish that Senator McCay "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that allegedly caused Mr. Brown's harm. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

With respect to Colonel Rapich, Mr. Browns' argument focuses solely on his lack of action *after* the incident. But, the Tenth Circuit has held "an isolated incident even coupled with a failure

to discipline is inadequate to support a finding of an affirmative link between the actions of the arresting officers and [the supervisor]," as required to establish a claim for supervisory liability. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013) ("Rarely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." (cleaned up)). Indeed, Mr. Brown has failed to explain how any post-incident conduct on the part of Colonel Rapich—the only type he raises in his opposition—could have "caused the complained of constitutional harm," *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021). *See Est. of Damon v. City & Cty. of Denver*, No. 18-CV-00982-RBJ, 2019 WL 10252744, at *8 (D. Colo. Nov. 1, 2019) (unpublished) ("As a general temporal matter, retrospective ratification cannot be a direct cause of a prior shooting."); *Davis v. City of Tulsa, Okla.*, 380 F. Supp. 3d 1163, 1174 (N.D. Okla. 2019) (unpublished) ("There is a temporal problem inherent in the plaintiffs' ratification theory. The City's post-shooting review could not have been the direct cause of (or 'moving force' behind) the shooting that occurred before the review.").

## 4. MR. BROWN'S STATE LAW CLAIMS SHOULD BE DISMISSED.

Defendants moved to dismiss Mr. Brown's state law claims on the bases Defendants are immune from those claims under Utah's Governmental Immunity Act (GIA) and, even if they were not, the claims fail on their merits.

### 4.1. Defendants are entitled to immunity under the GIA.

With respect to the former, Mr. Brown appears to argue the GIA does not apply because Defendants were not acting "within the scope of their authority" because he has alleged they were acting illegally. (*See* Opp. [Dkt. No. 35] at 16–17.) There are two problems with this argument.

First, the immunity afforded by the GIA is broader than Section 63G-7-201(4)(b), on which Mr. Brown relies. The GIA provides, "Except as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of government action." Utah Code § 63G-7-201(1). There can be no dispute that Defendants' conduct at issue involves a government function. *See* Utah Code § 63G-7-102(5) (defining "government function" as "each activity, undertaking or operation of a governmental entity" or "performed by a department, agency, employee, agent, or officer of a governmental entity"); *Peck v. State*, 2008 UT 39, ¶ 8, 191 P.3d 4 (explaining, "there is no dispute that the UHP troopers were undertaking a governmental function" when they pulled over and arrested the plaintiff). And, Section 63G-7-101 makes clear that the "scope of the waivers and retentions of immunity found in this comprehensive chapter . . . governs all claims against governmental entities or against their employees or agents arising *out of the performance of the employee's duties*, within the scope of employment, *or under color of authority*." Utah Code § 63G-7-101(2)(b) (emphasis added). Accordingly, contrary to Mr. Brown's apparent argument, immunity hinge on whether Defendants were acting "within the scope of employment."

Second, even if immunity did require that Defendants were acting within the scope of employment, they were. The Utah Supreme Court has explained the statutory standard "incorporates a principle from the law of agency." *Salo v. Tyler*, 2018 UT 7, ¶ 35, 417 P.3d 581. "An employee's action is within the scope of employment . . . if it is (1) of the general kind the employee is employed to perform and (2) motivated, at least in part, by the purpose of serving the employer's interest." *Id.* (cleaned up).

Under the allegations of Mr. Brown's amended complaint, Defendants' actions fall within the scope of their employment. (*See* Am. Compl. [Dkt. No. 25] ¶¶ 21–23.)

While Mr. Brown appears to believe that his allegation that Defendants performed their duties in an unlawful manner brings them outside the scope of employment, he offers no support for this position. Accepting Mr. Brown's argument, the immunity afforded under the GIA would be essentially meaningless, as the conduct giving rise to claims against a government entity—the tortious performance of governmental functions—would be exempted from immunity. In other words, only governmental functions perfectly performed, for which there is unlikely to be any claim, would be entitled to immunity. The Utah Supreme Court long ago rejected a similar interpretation of the scope of a governmental entity's immunity. *See Gillmor v. Salt Lake City*, 89 P. 714, 715 (Utah 1907) ("Nor does the allegation that the stream could have been searched without committing the alleged trespass make the city liable, and certainly not under the allegations of the complaint."); *see also State v. Gardiner*, 814 P.2d 568 (Utah 1991) (holding, in the context of the statute criminalizing assault on a peace who "is acting within the scope of his authority" that it "does not require that the State prove that the precise act the officer is performing is not legally challengeable, i.e., that the arrest or search being effected is entirely lawful and beyond challenge. All that must be shown is that the officer is acting within the 'scope of authority of a peace officer,'" which turns on "whether an officer is doing what he or she was employed to do or is engaging in a personal frolic of his or her own" (cleaned up)).

**4.2. Mr. Brown's state law claims fail to state a claim.**

With respect to Defendants' alternative argument—that even if they are not entitled to immunity under the GIA, Mr. Brown has failed to state a claim—Mr. Brown only briefly argues

Defendants did not have probable cause because they failed to comply with Utah Code Section 77-7-23. As discussed above, it was not necessary Mr. Brown be brought before a magistrate for a probable cause determination.

Because probable cause existed for Mr. Brown's arrest, he cannot maintain state law claims for false imprisonment or malicious prosecution (fifth and sixth causes of action).

Mr. Brown did not address Defendants' argument regarding his claim for assault, battery, and harassment (seventh cause of action). For the reasons stated in Defendants' motion, which incorporated the arguments from its motion to dismiss the original complaint (Mot. to Dismiss Compl. [Dkt. No. 23] at 34, § 2.2.2), Mr. Brown has failed to state this claim.

**5. MR. BROWN'S CLAIM FOR EQUITABLE RELIEF SHOULD BE DISMISSED.**

Defendants argued Mr. Brown's claim for equitable relief should be dismissed because he has not pled "a good chance of being likewise injured in the future," as required to have standing to assert such a claim. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). In response, Mr. Brown maintains that he satisfies this requirement because he "plans to attend future senate standing committee meetings and would rather not be subjected to similar embarrassment and harassment from the Defendants." (Opp. [Dkt. No. 35] at 18.) This, along with the underlying allegation in the amended complaint (Am. Compl. [Dkt. No. 25] ¶ 121), is insufficient to allow Mr. Brown to proceed with his equitable claims.

As noted in Defendants' motion, the allegation that Mr. Brown intends to attend future senate and house meetings is insufficient to establish a "real and immediate threat of being injured in the future" that is "certainly impending and not merely speculative." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (cleaned up). Mr. Brown's allegation regarding his intent

to attend "future senate and house standing committee meetings and/or other committee meetings held within the Utah State Capitol Complex" (Am. Comp. [Dkt. No. 25] ¶ 121) is not the type of "concrete, *present* plan" the Tenth Circuit has held sufficient to seek injunctive relief. Rather, it is the type of "[s]pectulative, someday intention[] [that] do[es] not support standing to seek protective relief." *See Tandy*, 380 F.3d at 1284–85 (distinguishing the plaintiff's allegations that "she intends to use Wichita Transit's fixed-route bus service several times per year for both personal transportation and to test it for access and compliance with the ADA and the Rehabilitation Act and, during May 2002, to check on whether the new buses have arrived and are accessible," which was sufficient from allegations the plaintiff in a different case "desire[d] to *someday* visit places halfway around the world," which were not).

## CONCLUSION

For the foregoing reasons and those set out in Defendants' motion (Dkt. No. 34), the Court should dismiss Mr. Brown's amended complaint in its entirety.

DATED this 18th day of November, 2022.

SNOW CHRISTENSEN & MARTINEAU

/s/ Dani Cepernich
Nathan Skeen
Dani Cepernich

OFFICE OF THE UTAH ATTORNEY GENERAL

Kyle Kaiser
Assistant Utah Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of November, 2022, I electronically filed the foregoing **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF System, and sent a copy to the following via email and US mail:

Mikel R. Brown
2942 Foss Circle
Bountiful, UT 84010
mikebrown@reagan.com

/s/ Shelly Deal
Legal Assistant