IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MIKEL R. BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL GRIGGS, et al.,<br><br>Defendants. | REPORT & RECOMMENDATION RE: ECF 34<br><br>AND<br><br>ORDER DENYING ECF 41<br><br>Case No. 1:22-cv-00091-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

This case is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 20). Before the court is Defendants Darrell Griggs (Defendant Griggs), Seth Dalton (Defendant Dalton), Greg Holley (Defendant Holley), Wade Breur (Defendant Breur), Roger Daniels (Defendant Daniels), Ernest Peterson (Defendant Peterson), Daniel McCay (Senator McCay), and Michael Rapich's (Defendant Rapich) (collectively, Defendants) Motion to Dismiss (Motion) (ECF 34) for failure to state a claim. Also before the court is Plaintiff's "Motion for Writ Affidavit of Commercial Liability" (Motion for Writ) (ECF 41). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter based on the written memoranda. *See* DUCivR 7-1(g). For the reasons below, the court DENIES Plaintiff's Motion for Writ (ECF 41), and the undersigned RECOMMENDS that the court GRANT Defendants' Motion to Dismiss (ECF 34).

## I.    BACKGROUND

Plaintiff Mikel Ray Brown (Plaintiff) proceeding pro se, filed his initial Complaint on July 15, 2022 (ECF 1). On October 4, 2022, Plaintiff filed his Amended Complaint (Amended

Complaint) (ECF 25). Plaintiff brings claims against Senator McCay alleging he is the chair of the Utah Senate Revenue and Taxation Standing Committee (*id.* at ¶ 3), Defendant Rapich alleging he is the superintendent of the Utah Highway Patrol (UHP) (*id.* at ¶ 9), Defendant Griggs alleging he is the Sergeant-at-Arms of the Utah Senate (*id.* at ¶ 2), and Defendants Dalton, Holley, Breur, Daniels and Peterson alleging they are UHP Troopers (collectively, UHP Troopers) (*id.* at ¶¶ 4–8). In response, Defendants filed their Motion to Dismiss on October 25, 2022 (ECF 34). Plaintiff filed a Response to the Motion on November 4, 2022 (Opposition) (ECF 35). Defendants' Reply was filed on November 18, 2022 (Reply) (ECF 40). Plaintiff then filed his Motion for Writ (ECF 41), and Defendants responded (ECF 42).

As alleged in Plaintiff's Amended Complaint (ECF 25), this lawsuit arises from an incident on March 1, 2022, when Plaintiff attended a public meeting at the Utah State Capitol to hear debate on proposed House Bill 60 (HB60) (*id.* at ¶ 24). After taking his seat, Plaintiff was presented with a clipboard that had stickers with the words "Vote Yes, HB60" (*id.* at ¶ 27). Plaintiff took two of the stickers and placed one on his hat and the other on the back of his phone case and alleges that he noticed many people in attendance take the stickers and place them on their shirts (*id.* at ¶¶ 28–29). As Plaintiff waited for the meeting to begin, he noticed Defendant Griggs going around demanding that the stickers be removed (*id.* at ¶ 30).[1] Plaintiff asked Defendant Griggs what rule he was breaking by having the stickers (*id.* at ¶ 32). Defendant Griggs did not tell Plaintiff what rule he is breaking, nonetheless, Plaintiff told Defendant Griggs that he would "replace the sticker" (*id.* at ¶ 34). Defendant Griggs was allegedly not "satisfied" with Plaintiff's actions and motioned to Defendant Breur and said: "Let's ask him (Plaintiff) to step outside" (*id.* at ¶ 35). Defendant

---

[1] Plaintiff asserts that Defendant Griggs was the "Sergeant-at-Arms" during the meeting (ECF 25 at ¶ 2), while Defendants argue that Defendant Griggs was given this title sometime later (ECF 34 at 2 n. 1). For the sake of this Motion, the court finds the distinction is not material and accepts the allegation as pled in the Amended Complaint.

Breur stated that signs and banners were prohibited in committee meeting, and Plaintiff asserted that the sticker was "not a sign" (*id.* at ¶¶ 39–40). At this point, Defendant Breur told Plaintiff that he would give him one chance to "take off any visible stickers before the meeting [began]," and if Plaintiff did not, then he would be "out" (*id.* at ¶ 40). Plaintiff insisted to be shown or given the statute that prohibited him from having the sticker, but this was never offered to him (*id.* at ¶¶ 42–44).

Plaintiff then noticed that Defendants Breur and Griggs approached Senator McCay, the chair of the senate revenue and taxation standing committee, and began speaking with him (*id.* at ¶ 49). Senator McCay opened the meeting and explained that posters, stickers, outburst of any kind, or any demonstrations on how one feels about the bill were not allowed (*id.* at ¶¶ 52–53). Senator McCay then decided that because there were people not complying with the rules, he would hold a five-minute recess which would end once those in attendance had complied with the rules (*id.* at ¶ 54). Plaintiff was asked again by Defendant Griggs to put his stickers away (*id.* at ¶ 56). Plaintiff gave Defendant Griggs one of the stickers but kept the second sticker, telling Defendant Griggs he would "just turn it over" (*id.* at ¶ 60). Plaintiff then asked Defendant Griggs questions about what law he was breaking, and Defendant Griggs told Plaintiff that if he wanted to argue he would have to leave (*id.* at ¶¶ 61–62). Plaintiff next questioned Defendant Griggs about a Ukrainian flag that was on Defendant Griggs' lapel (*id.* at ¶ 65–66). Plaintiff alleges that Defendant Griggs took issue with the questioning and motioned to UHP Trooper, Defendant Holley (*id.* at ¶¶ 67–68). Defendant Holley informed Plaintiff that he was being removed from the meeting, and Plaintiff responded by saying that he complied with the order because the sticker was put away (*id.* at ¶¶ 68–71).

Defendant Holley grabbed Plaintiff's arm to remove him from the meeting but let go to tell Plaintiff that he had been kicked out for disrupting the meeting, and he could leave on his own or be removed. (*id.* at ¶ 72). Plaintiff responded by saying: "But the meeting is in recess, the meeting isn't disrupted" (*id.* at ¶ 74). Defendant Holley told Plaintiff a second time: "Ok, it's your decision. Do you want to be arrested or do you want to leave?" (*id.*). Plaintiff asserted that he had complied, and Defendant Holley reminded Plaintiff again of his two choices (*id.*). Plaintiff again insisted that he had complied by putting the sticker away, but this resulted in Defendant Holley informing Plaintiff that he was under arrest (*id.*).

Defendants Holley and Dalton grabbed Plaintiff by the arms to arrest him (*id.* at ¶ 77). Defendant Breur assisted Defendants Holley and Dalton by pushing Plaintiff from behind to get him to the other side of the room (*id.* at ¶ 78). Two more UHP Troopers, Defendants Daniels and Peterson, arrived to assist with the handcuffing and arrest (*id.* at ¶ 80). Because of the stress of the situation, Plaintiff alleges he had a panic attack while being transported to the holding room (*id.* at ¶¶ 83–84). Around this time, Plaintiff overheard Defendants Breur and Dalton discussing what crime to cite Plaintiff with, and Plaintiff heard Defendant Breur on the phone "asking if Plaintiff was removed from the meeting because of his shirt and/or the sticker" (*id.* at ¶ 85). Plaintiff was wearing a shirt that had the words "WE THE PEOPLE" written on it (ECF 25 at 2, ¶ 130).

After being in handcuffs for about thirty minutes and directed to a holding room, Plaintiff was read his Miranda Rights and was told that UHP stepped in when he did not comply with Defendant Griggs' order (*id.* at ¶¶ 86–87). Plaintiff told Defendant Breur that he was having a panic attack due to the stress of the situation and then allegedly suffered another panic attack (*id.* at ¶ 89). Plaintiff was then informed that his attorney was there, and after having his vitals checked by a medical team, Plaintiff was told he would be taken to his attorney after UHP was finished

questioning him (*id.* at ¶¶ 90–91). Shortly after, Defendant Dalton gave Plaintiff a citation charging him with violating Utah Code Ann. § 76-9-103, disruption of a meeting or procession (*id.* at ¶ 92). In April 2022, the charges against Plaintiff were dropped after the prosecution concluded that because of "the apparent confusion regarding what was and was not permitted speech and expected comportment in a public hearing. . .this matter [did] not meet the criminal standard of proof beyond a reasonable doubt" (*id.* at ¶¶ 100–03, ECF 25-1 at 8–9).

Plaintiff asserts seven claims in his Amended Complaint (*see id.* at ¶¶ 123–162). Plaintiff raises combined claims against Defendants Griggs, Dalton, Holley, Breur, Daniels, and Peterson (collectively, Officer Defendants), and combined claims against Senator McCay and Defendant Rapich. Plaintiff's first four causes of action are brought under 42 U.S.C. § 1983, asserting First, Fourth, Fifth, Sixth and Fourteenth Amendments violations (ECF 25 at ¶¶ 22–30, 123–148). Plaintiff's final three claims are brought under state law, asserting that the officers who arrested him committed false imprisonment, malicious prosecution, aggravated assault, battery, and harassment (*id.* at ¶¶ 149–162). Along with these claims, Plaintiff asks the court to grant permanent injunctive relief against all Defendants (*id.* at 30–33) and seeks compensatory damages in the amount of $450,000 against Officer Defendants (*id.* at 33).

Defendants move to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (ECF 34 at 7), and assert various defenses to Plaintiff's claims, such as legislative immunity, qualified immunity, and governmental immunity (ECF 34 at 7–9).[2]

---

[2] Because the court is constrained to "the four corners" of the complaint, the court does not take judicial notice of the two body camera videos introduced by Defendants (ECF 23-1). *Duran v. Colbert*, No. 2:16-CV-805 CW, 2023 WL 2742738, at *2 (D. Utah Mar. 31, 2023) (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")). Furthermore, Defendants assert that the videos are "not critical to and do not alter" the grounds for their Motion (ECF 40 at 4). Because the video footage is not being considered, it is unnecessary to address Plaintiff's argument that Defendants' Motion is improper and must be converted to a motion for summary judgment (ECF 35 at 8, 18–20).

Defendants also assert that Plaintiff's request for injunctive relief must be dismissed "because there is no active controversy between the parties," and Plaintiff's request "asks for nothing more than Defendants to follow the law" (*id.* at 9).

## II.  <u>LEGAL STANDARDS</u>

When deciding whether a complaint states a claim upon which relief may be granted, a court takes all well-pleaded factual statements as true and regards them in a light most favorable to the plaintiff. *Ridge at Red Hawk LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)). Dismissal is fitting when, viewing those facts as true, a plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). Plaintiff has the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest'" entitlement to relief. *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," a court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554–55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, 493 F.3d at 1177.

When qualified immunity is raised in a motion to dismiss, "the court accepts the well-pleaded facts contained in the complaint as true and construes them in the light most favorable to the plaintiff." *Long v. Boucher*, No. 1:19-cv-56, 2020 WL 6899496, at *2 (D. Utah Nov. 24, 2020) (citing *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)). "Questions of qualified immunity

should be resolved at the soonest feasible stage of litigation." *Losee v. Preece*, No. 2:18-CV-195 TC, 2022 WL 957194, at *3 (D. Utah Mar. 30, 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (stating that the "driving force behind" qualified-immunity principles is "that 'insubstantial claims' against government officials be resolved prior to discovery ... if possible")).

To overcome the defense of qualified immunity, a plaintiff must allege sufficient facts taken as true to show that: (1) "the officer[s] asserting qualified immunity 'violated a federal statutory or constitutional right,'" and (2) "'the unlawfulness of [the officers'] conduct was clearly established at the time.'" *Boucher*, 2020 WL 6899496, at *2 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "To determine whether an officer is entitled to qualified immunity the court must ask whether an officer has 'acted in an objectively reasonable manner or, as [the Court has] sometimes put it, in 'objective good faith.'" *Boucher*, 2020 WL 6899496, at *2 (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified immunity standard," qualified immunity is warranted. *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citing *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'")). The court "may address either prong first to achieve 'the fair and efficient disposition of each case.'" *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1232 (10th Cir. 2022) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)).

A court construes pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual

allegations to round out [Plaintiff's] complaint or construct a legal theory on his behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). If pleadings can reasonably be read "to state a valid claim on which the plaintiff could prevail, [they should be read] so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998).

### III.   DISCUSSION

#### A.   Plaintiff's Official-Capacity Claims against All Defendants

Plaintiff brings suit against Senator McCay and Defendant Griggs in both their official and personal capacities, alleging that they acted under the authority of the Utah State Senate, a division of the legislative branch of the State of Utah (*id.* at ¶¶ 2–3). Plaintiff also brings suit against the UHP Troopers in both their official and personal capacities, alleging they are employed by UHP, "which is a division of the Utah Department of Public Safety, a political subdivision of the executive branch of Utah" (*id.* at ¶¶ 4–8, 23). Lastly, Plaintiff brings suit against Defendant Rapich only in his official-capacity as a UHP officer (*id.* at ¶ 9).[3]

In *Kentucky v. Graham*, the Supreme Court explained the difference between personal-capacity suits and official-capacity suits: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," whereas official-capacity suits against an officer are generally treated as suits against the governmental entity of which the officer is an agent. 473 U.S. 159, 166 (1985). "When a governmental official is sued in [both]

---

[3] Defendant Rapich is the only defendant sued only under his "official-capacity" (ECF 25 at 1).

official and individual capacities for acts performed in each capacity, those acts are treated as the transactions of two different legal personages." *Myers v. St. George Police Dept.*, No. 4:20-cv-00113-DN-PK, 2021 WL 4150888, at *8 (D. Utah Sept. 13, 2021), *aff'd sub nom. Myers v. Tufuga*, No. 22-4027, 2023 WL 2054061 (10th Cir. Feb. 17, 2023) (quoting *Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (quoting *Graham*, 473 U.S. at 166).

For this reason, Plaintiff's "official-capacity" claims against Senator McCay would be treated as claims against his employer, the State of Utah, which Plaintiff did not name as a party in this suit. The same is true for Plaintiff's "official-capacity" claims against the Officer Defendants. According to Plaintiff, Defendant Griggs was acting as the Sargent-at-Arms on the date of the incident (ECF 25 at ¶ 20), therefore making his employer the State of Utah. As for the remaining Officer Defendants and Defendant Rapich, their employer is UHP, or more specifically the Utah Department of Public Safety, which constitutes an arm of the State of Utah. *See Domai v. Utah Hwy. Patrol*, No. 2:14-CV-00583-RJS-EJF, 2016 WL 5404158, at *3 (D. Utah Sept. 8, 2016), *report and recommendation adopted*, No. 2:14-cv-00583-RJS-EJF, 2016 WL 5396677 (D. Utah Sept. 27, 2016).[4] Thus, Plaintiff's "official-capacity" claims against all Defendants would have to be brought against the State of Utah, which is not a named party in the suit.

As a result, the undersigned RECOMMENDS that Plaintiff's "official-capacity" claims against all Defendants be DISMISSED without prejudice for failure to state a claim. Moving

---

[4] Although Plaintiff's original complaint (ECF 1) named the Utah Highway Patrol (UHP) as a party to the suit, UHP was not named as a party in Plaintiff's Amended Complaint (ECF 25 at 1).

forward in this analysis, the court will only be considering Plaintiff's "personal-capacity" claims brought against Defendants.[5]

### B.   Claims against Senator McCay

Plaintiff asserts that because Senator McCay failed to train, supervise, and/or oversee the Officer Defendants, Senator McCay violated Plaintiff's rights protected by the Fourth, First, Fifth, Sixth and Fourteenth Amendments (ECF 25 at ¶¶ 125–48). Defendants argue that all claims asserted against Senator McCay must be dismissed because "the doctrine of legislative immunity acts as an absolute bar," and Plaintiff has failed to allege any facts that Senator McCay is "actually the supervisor" for any of the Defendants (ECF 34 at 20–23, 39–41). The court finds it unnecessary to determine if Plaintiff has pled sufficient facts to show that on the date of the meeting, Senator McCay was the supervisor of any of the Officer Defendants, or if Senator McCay had the responsibility to train or oversee their activities. This is because the court finds that Senator McCay's relevant actions and/or inactions are protected under the doctrine of legislative immunity.

"[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Myers*, 2021 WL 4150888, at *9 (quoting *Graham*, 473 U.S. at 166). As for available defenses, "an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses" such as legislative immunity. *Graham*, 473 U.S. at 166 (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). "[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Manzanares v. Reyes*, No. 2:14-cv-00040-DN-EJF, 2015 WL 5821413, at *7 (D. Utah Oct. 5, 2015) (quoting *Bogan v. Scott–Harris*, 523 U.S. 44, 49

---

[5] Because the court will only be addressing Plaintiff's "personal-capacity" claims, Plaintiff's requests for declaratory and injunctive relief against Defendants (ECF 25 at 30–33) are also subject to dismissal. *See Chilcoat v. San Juan County*, 41 F.4th 1196, 1214 (10th Cir. 2022) ("Under § 1983, a plaintiff cannot sue an official in their [personal] capacity for injunctive or declaratory relief.").

(1998)). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id.* (quoting *Bogan*, 523 U.S. at 54). The doctrine of legislative immunity "enables officials to serve the public without fear of personal liability. Not only may the risk of liability deter an official from proper action, but the litigation itself 'creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" *Sable v. Myers*, 563 F.3d 1120, 1123–24 (10th Cir. 2009) (quoting *Supreme Court of Va. v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 734 (1980)). "Given this purpose, whether there is immunity must 'turn[] on the nature of the act, rather than on the motive or intent of the official performing it.'" *Id.* (quoting *Bogan,* 523 U.S. at 54).

The Tenth Circuit has "followed the Supreme Court's broad view of legislative immunity." *Id.* at 1125. Yet in *Kamplain*, the Tenth Circuit refused to grant legislative immunity to a county board of commissioners who banned the plaintiff from speaking at all future meetings. *Kamplain v. Curry County Board of Commissioners*, 159 F.3d 1248, 1252 (10th Cir. 1998). The Tenth Circuit found that the board's actions were not "related to any legislation or legislative function." *Id.* Unlike the board in *Kamplain*, Senator McCay's actions to maintain order during the legislative meeting related to legislation and a legislative function, given that the purpose of the meeting was to listen to debate about the proposed HB60. And as Plaintiff asserts in the Amended Complaint, it was Senator McCay's duty to "ensure the integrity of the standing committee process by enforcing legislative rules and parliamentary procedure without delay" (ECF 25 at ¶ 18). Under these circumstances denying Senator McCay legislative immunity would require the court "to adopt a very restrictive view of what is 'legitimate legislative activity.'" *Sable*, 563 F.3d at 1126 (quoting *Bogan,* 523 U.S. at 54). This restrictive view "would undermine the legislature's effectiveness, interfere with constituents' democratic representation, and raise the specter of

11

endlessly distracting litigation." *Manzaneres*, 2015 WL 5821413, at \*8 (citing *Bogan*, 523 U.S. at 52). Granting legislative immunity to Senator McCay for maintaining order during a committee meeting on proposed legislation is consistent with the Supreme Court's "broad view of legislative immunity," such that "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). The court therefore concludes that Senator McCay is entitled to legislative immunity, and the claims against Senator McCay are therefore subject to dismissal.

For these reasons, the undersigned RECOMMENDS that Defendants' Motion be GRANTED as to Plaintiff's claims against Senator McCay, and DISMISS without prejudice Plaintiff's claims against Senator McCay under the doctrine of legislative immunity.

### C.   Plaintiff's § 1983 Claims

#### i.   First claim – Violation of the Fourth Amendment

Plaintiff asserts that the Officer Defendants violated his "right to be free of unreasonable searches and seizures protected by and guaranteed by the Fourth Amendment" when they falsely arrested him without probable cause (ECF 25 at ¶ 124). Defendants argue that Plaintiff's false arrest claim should be dismissed because it fails both prongs of the qualified immunity standard (*See* ECF 34 at 23, 24–30).

The court begins by addressing the first prong of the qualified immunity analysis. Under the first prong, Plaintiff must sufficiently plead that the Officer Defendants violated his "federal statutory or constitutional right." *Boucher*, 2020 WL 6899496, at \*2 (quoting *Wesby*, 138 S. Ct. at 589). Plaintiff asserts that the Officer Defendants violated his rights under the Fourth Amendment because they arrested him without probable cause (ECF 25 at ¶ 124). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures." U.S. Const. am. IV. "[A]n arrest . . . without probable cause that a crime has been committed violates the Fourth Amendment." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010)). That said, "when an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008). Probable cause "requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Frey*, 41 F.4th at 1233 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007)). "The subjective mindset of the arresting officer does not matter—rather, we ask whether the totality of the circumstances, viewed objectively, justifies the arrest." *Id.* (citing *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020)). For the following reasons, the court finds that Plaintiff has not sufficiently pled that the Officer Defendants violated his Fourth Amendment rights.

As alleged in the Amended Complaint, Plaintiff was arrested and issued a citation for disrupting a public meeting as prohibited by Utah Code Ann. § 76-9-103 (ECF 25 at ¶ 92). A person violates this section "if, intending to prevent or disrupt a lawful meeting ... he obstructs or interferes with the meeting ... by physical action, verbal utterance, or any other means." Utah Code Ann. § 76-9-103. The allegations in the Amended Complaint indicate that Plaintiff refused to take off his stickers, even after being told repeatedly that the removal of the stickers was necessary based on the rules and procedures of the meeting (ECF 25 at ¶¶ 32, 37, 40, 42, 44). Senator McCay made it clear to everyone in attendance, including Plaintiff, that "any demonstrations on how one feels about the bill" were not allowed, stickers included (*id.* at ¶ 53). Senator McCay proceeded to put the meeting in recess because there were individuals in the audience, including Plaintiff, who

were not following the rules (*id.* at ¶ 54). Plaintiff admits that the rule being referenced is Utah Code Ann. § 76-9-103 (*id.* at ¶ 43).[6] Defendant Griggs then asked Plaintiff to comply, Plaintiff gave Defendant Griggs one of the stickers stating he wanted to keep the other sticker, but he would "turn it over" (i.e., make it not visible) (*id.* at ¶¶ 56–60 ). Plaintiff then asked if it was true that whatever the committee chair says was the same as law (*id.* at ¶ 61), to which Defendant Griggs replied: "If you want to argue with me I'm going to have you come out" (*id.* at ¶ 62). Plaintiff replied by saying that he just wanted to know what law he was violating (*id.*).[7] Plaintiff then questioned Defendant Griggs about a Ukrainian flag that was on Defendant Griggs' lapel (*id.* at ¶ 65–66). Plaintiff alleges that Defendant Griggs "appear[ed] to take issue with this questioning" and eventually motioned to Defendant Holley (*id.* at ¶¶ 67–68).[8] Defendant Holley informed Plaintiff that he was being removed from the meeting, but Plaintiff responded by saying that he had complied with the orders (*id.* at ¶ 71). Plaintiff was then told that he had disrupted the meeting and his could choose to be arrested or leave on his own accord (*id.* at ¶¶ 72–74). Plaintiff did not leave but continued to assert that he had complied by putting the stickers away (*id.* at ¶ 74). At this point, Plaintiff was informed that he was under arrest and then forcibly removed from the meeting (ECF ¶¶ 76–81).

---

[6] To the extent that Plaintiff argues that Utah Code Ann. § 76-9-103, or the rule prohibiting "any demonstrations on how one feels about the bill," is unconstitutional and therefore unenforceable, is irrelevant to whether an officer has probable cause to arrest. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 927–28 (10th Cir. 2015) ("[T]he validity of the statute is hardly relevant to the probable cause determination because officers generally may presume that statutes are constitutional until declared otherwise.").

[7] The Amended Complaint does indicate that Plaintiff was never told which statute he was violating until after he was already detained, but at the time of arrest, a reasonable officer may not be able to determine or pick "a specific theory under the statute" to arrest an individual. *Calhoun v. Buck*, 371 F. Supp. 3d 1008, 1015 (D. Utah 2019). "As such, an arrest is considered lawful 'as long as probable cause exists for *some* offense.'" *Id.* (quoting *Morris v. Noe*, 672 F.3d 1185, 1193 (10th Cir. 2012)). Consequently, the Officer Defendants did not violate any duty or law by not explaining to Plaintiff the exact statute he was allegedly violating by wearing the stickers and disrupting the meeting.

[8] The court notes that even if Defendant Griggs did take issue with Plaintiff's questioning about the pin on his lapel, "[t]he subjective mindset of the arresting officer does not matter—rather, we ask whether the totality of the circumstances, viewed objectively, justifies the arrest." *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) (quoting *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020)).

For Plaintiff to state a plausible claim for a Fourth Amendment violation, he must allege facts from which the court may reasonably infer the Officer Defendants lacked probable cause. "Plaintiff must nudge the claims across the line from conceivable or speculative to plausible." *Frey*, 41 F.4th at 1232–33 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011)). "[L]abels, conclusions, formulaic recitations of elements, and naked assertions will not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Id.* (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). Conclusory allegations are "not entitled to the assumption of truth." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). The court disregards conclusory statements and looks "to the remaining factual allegations to determine whether a plaintiff stated a plausible claim." *Id.* (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The court "must draw on [its] experience and common sense in evaluating the plausibility of a claim." *Id.* (citing *Iqbal*, 556 U.S. at 679).

Plaintiff's allegation that the Officer Defendants violated his Fourth Amendment rights by falsely arresting him without probable cause is a conclusory statement. Consequently, the court disregards this statement and looks "to the remaining factual allegations" to determine if Plaintiff stated a plausible claim. *Frey*, 41 F.4th at 1233 (citing *Waller*, 932 F.3d at 1282). Disregarding Plaintiff's conclusory statements and looking to the remaining factual allegations, the court finds that Plaintiff has failed to nudge his Fourth Amendment claim "across the line from conceivable or speculative to plausible." *Frey*, 41 F.4th at 1232–33 (quoting *Brown*, 662 F.3d at 1162–63). The facts as alleged in the Amended Complaint would lead a reasonable officer to believe that Plaintiff was committing, or had committed a crime during the meeting. More specifically, the facts as alleged by Plaintiff would lead a reasonable officer to believe that Plaintiff was obstructing or

interfering with the meeting in violation of Utah Code Ann. § 76-9-103, by wearing the stickers, refusing to take off the stickers, and insistently demanding to be told what law he was breaking.[9] The Amended Complaint therefore fails under the first prong because Plaintiff has failed to plead sufficient facts to show that the Officer Defendants lacked probable cause to arrest him.

The Amended Complaint also fails under the second prong of the qualified immunity analysis. Under the second prong, Plaintiff must plead sufficient facts to show that "the unlawfulness of [the officers'] conduct was clearly established at the time." *Boucher*, 2020 WL 6899496, at *2 (quoting *Wesby*, 138 S. Ct. at 589). The Tenth Circuit has held that "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (quoting *Mullenix*, 136 S. Ct. at 308). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* (quoting *Wesby*, 138 S. Ct. at 589). "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Id.* (quoting *Mullenix*, 136 S. Ct. at 308). "Accordingly, the Supreme Court has repeatedly admonished circuit courts 'not to define clearly established law at a high level of generality.'" *Id.* (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018)).

Although at the motion to dismiss stage, "'a case directly on point' is not required, 'existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate.'" *Id.* (quoting *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019)). Precedent, however, "must be

---

[9] That Plaintiff's charges were dropped and never adjudicated is not evidence that the Officer Defendants violated the Fourth Amendment by acting without probable cause. At this stage of litigation, the question is not if Plaintiff 'actually' committed a crime, the question is if an objectively reasonable officer would have sufficient reason to believe that Plaintiff was committing or had committed a crime. *See Frey*, 41 F.4th at 1234 ("[W]hether officers have probable cause to believe a person committed a crime in their presence is the only relevant question for determining the federal constitutionality of an arrest." (citing *United States v. Turner*, 553 F.3d 1337, 1346 (10th Cir. 2009))).

16

particularized to the facts." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 552, (2017)). And "precedent is often particularized when it involves materially similar facts." *Id.* (citing *White*, 137 S.Ct. at 552). "Thus, a right is clearly established when a precedent involves '*materially similar conduct*' or applies 'with *obvious clarity*' to the conduct at issue. *Id.* (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964–65 (10th Cir. 2016)).

Plaintiff fails to cite precedent involving facts that are "materially similar" to this case or that applies with "obvious clarity." *Apodaca*, 864 F.3d at 1076 (stating that "[a] constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent" (citing *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011))).[10] Defendants, however, cite to two non-binding but persuasive cases that are "materially similar" to this case (*see* ECF 34 at 27–28). The first case Defendants provide is *Norse v. Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) (en banc). In *Norse*, the Ninth Circuit found that it was likely that the city's rules on disruptive conduct violated the First Amendment as-applied, however, the court affirmed the grant of qualified immunity to the officer who arrested the plaintiff for giving a silent "Nazi salute" during a public meeting. 629 F.3d at 976–78. The Ninth Circuit affirmed that "a reasonable officer could have believed that probable cause existed to arrest" the plaintiff for violating the state's statute prohibiting the disturbance of a public meeting. *Id.* at 978.

The same is true for Defendants' second "materially similar" case, *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017). In *Heaney*, the Fifth Circuit affirmed the grant of qualified immunity to an officer who was requested by the council chair to remove the plaintiff from a public meeting,

---

[10] *See also Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) ("A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.") (quoting *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008)).

following an argumentative exchange between the plaintiff and the chair. *Id.* at 798–99. The Fifth Circuit affirmed that the officer who removed plaintiff was entitled to qualified immunity "because his actions as sergeant-at-arms were not objectively unreasonable in light of clearly established law." *Id.* at 804. The Fifth Circuit further affirmed that the officer "was not required to cross-examine and second-guess" the chair's motives before acting. *Id.* (citing *Collinson v. Gott*, 895 F.2d 994, 997 (4th Cir. 1990) (affirming qualified immunity for a sheriff's deputy who escorted a citizen out of a city council meeting upon receiving orders to do so from the presiding officer)).

The rulings in *Norse* and *Heaney*, suggest that "when an officer arrests someone in violation of the rules of the meeting[,] and in response to the request of the leaders of the meeting to eject the person," at least some degree of probable cause exists to support the offending person's arrest (ECF 34 at 27). Plaintiff has provided no precedent to contradict the cases presented before the court by Defendants. Thus, the court finds that Plaintiff fails to allege facts showing that existing precedent places "the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Ullery*, 949 F.3d at 1291 (quoting *Cummings*, 913 F.3d at 1239).

As a result, the undersigned RECOMMENDS that the court GRANT Defendants' Motion as to Plaintiff's first cause of action and DISMISS with prejudice Plaintiff's Fourth Amendment claim under qualified immunity.

ii.   *Second claim – Violation of the First and Fourteenth Amendments*

Plaintiff asserts that the Officer Defendants violated his First and Fourteenth Amendment right "to engage in free speech on an equal basis with other citizens" when the Officer Defendants arrested him for engaging in "silent, nonviolent, expression of his support…for the proposed legislation" (ECF 25 at ¶ 130). Defendants argue that Plaintiff's second cause of action should be

dismissed because the claims fail under both prongs of the qualified immunity standard (ECF 34 at 30–34).

As to the first prong, Plaintiff alleges that the Officer Defendants violated his First Amendment rights (ECF 25 at ¶ 130). The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). For Plaintiff to sufficiently allege a First Amendment retaliation claim, he must plead facts showing that: "(1) he engaged in activity the First Amendment protects; (2) [The Officer Defendants'] actions injured him in a way that would 'chill a person of ordinary firmness from continuing to engage in that activity'; and (3) his protected activity substantially motivated [the Officer Defendant's] responsive actions." *Frey*, 41 F.4th at 1232 (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). And when, as here, a plaintiff is pursuing a claim for retaliatory arrest against a law-enforcement officer, "a plaintiff must plead either that the officer lacked probable cause to arrest or that the officer historically has not arrested similarly situated people who were not engaged in the same type of speech." *Id.* (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726–27 (2019)).

As explained above, this court finds that Plaintiff has failed to allege sufficient facts to show that a reasonable officer would not have had probable cause to arrest Plaintiff. Even so, Plaintiff need not allege a lack of probable cause for his retaliatory-arrest claim if he can allege facts showing "that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* (quoting *Nieves*, 139 S. Ct. at 1727)*. Accordingly, Plaintiff need not allege a lack of probable cause if he establishes that other attendees were not arrested for also resisting to take off their stickers. Plaintiff, however, does not make such allegations. The Amended Complaint fails to indicate that there were any other attendees who

continually resisted to take off the stickers as Plaintiff did. Plaintiff appears to assert that he was singled out because he was wearing a t-shirt that had the words "WE THE PEOPLE" written on it (ECF 25 at 2, ¶¶ 105, 130). Plaintiff, however, provides no factual development to support this assertion. Plaintiff has thus failed to state a claim of retaliatory-arrest because he has insufficiently pled that the Officer Defendants acted without probable cause, or that he was arrested "when other similarly situation individuals" were not. Consequently, Plaintiff's First Amendment claim fails under the first prong of the qualified immunity standard. This claim also fails under the second prong because Plaintiff fails to allege facts showing that existing precedent places "the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Ullery*, 949 F.3d at 1291 (quoting *Cummings*, 913 F.3d at 1239). The court therefore finds that Plaintiff's First Amendment claim fails under qualified immunity.

The court now considers Plaintiff's Fourteenth Amendment claim brought within his second cause of action. Plaintiff alleges that he was deprived "of his fundamental right to engage in free speech on an equal basis with other citizens, to petition his state government for the redress of grievance, and to engage freely in political expression as protected by and guaranteed by the First and Fourteenth Amendments" (ECF 25 at ¶ 130). Plaintiff's "attempt to invoke the protections of the Fourteenth Amendment in addition to those offered by the more specific constitutional guarantees implicated by each of those claims is inappropriate." *Sanders v. Werner*, No. 19-cv-01736-KLM, 2021 WL 877725, at *3 (D. Colo. Mar. 8, 2021), *aff'd*, No. 21-1096, 2022 WL 1052055 (10th Cir. Apr. 8, 2022) (quoting *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *4 (D. Colo. Sept. 6, 2013)). The Supreme Court has held "'[w]here a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more

generalized notion of 'substantive due process,'" must be the guide for analyzing these claims.'" *Robinson v. Brandon*, No. 2:16-cv-00150-DB-EJF, 2018 WL 4691661, at *4 (D. Utah Aug. 31, 2018), *report and recommendation adopted,* No. 2:16-cv-150-DB-EJF, 2018 WL 4688353 (D. Utah Sept. 28, 2018) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).[11] Accordingly, because the First Amendment provides "an explicit textual source of constitutional protection" for Plaintiff's claims, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" these claims. *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

In *Becker*, when determining the effects of *Albright* on due process malicious prosecution claims, the Tenth Circuit stated that the Supreme Court "has yet to clarify the scope of the plurality holding in *Albright*." *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007). Because of this, the court in *Becker* considered whether the plaintiff had a viable procedural or substantive due process claim that was not covered by the Fourth Amendment. *Becker*, 494 F.3d 917–22; *see also Pfundstein v. Home Depot U.S.A., Inc.*, No. 2:21-CV-00340-BSJ-JCB, 2022 WL 407283, at *8 (D. Utah Feb. 10, 2022) (finding that the plaintiff had failed to demonstrate any alternative theory for liability under the fourteenth amendment). However, looking to *Becker*, even if the court is required to evaluate if Plaintiff has a viable procedural or substantive due process claim, he has failed to allege any facts to support either (ECF 25 at ¶ 130–134). The court therefore finds that Plaintiff's second cause of actions fails to sufficiently plead a claim under the Fourteenth Amendment.

---

[11] *See also Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *4 n. 7 (D. Colo. Sept. 6, 2013) (noting that "this same rationale applies to claims implicating the procedural protections of the Fourteenth Amendment as well" (citing *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007))).

For these reasons, the undersigned RECOMMENDS that Plaintiff's second cause of action under the First Amendment be DISMISSED with prejudice as to the Officer Defendants under qualified immunity. The undersigned also RECOMMENDS that Plaintiff's second cause of action under the Fourteenth Amendment be DISMISSED without prejudice as to the Officer Defendants for failure to state a claim.

### iii.   Third claim – Violation of the Fifth and Fourteenth Amendments

Plaintiff argues that the Officer Defendants violated the Fifth and Fourteenth Amendment guarantee of equal protection when they "arbitrarily, capriciously, and without rational basis, treated Plaintiff differently from other attendees in the room subject to the same rules" (ECF 25 at 25 ¶ 136). As for Plaintiff's Fifth Amendment claim, the Tenth Circuit has held that the "Due Process Clause of the Fifth Amendment applies only to action by the federal government." *Koessel v. Sublette Cnty. Sheriff's Dept.*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Here, the Amended Complaint does not allege that any of the Officer Defendants acted on behalf of the federal government. Liberally construing the Amended Complaint, all three of the Officer Defendants are state actors. Because Plaintiff fails to plead that any of the Officer Defendants' actions are attributable to the federal government, his claim brought under the Fifth Amendment is properly dismissed.

The court now considers Plaintiff's "class-of-one" equal protection claim under the Fourteenth Amendment. A "class-of-one" case, is one where "a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Boldt v. Am. Fork City*, No. 2:20-cv-817-TC-DAO, 2021 WL 5731587, at *7 (D. Utah Dec. 2, 2021) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)). The Supreme Court has

"'recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Courts "have approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" *Kansas Penn*, 656 F.3d at 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)). Given the concerns associated with class-of-one claims, "courts have imposed a strict standard that narrows a plaintiff's ability to prevail on a class-of-one claim." *Boldt*, 2021 WL 5731587, at *8. "To sufficiently state a class-of-one claim, a plaintiff must allege that others 'similarly situated in every material respect were treated differently [and that] this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity.'" *Id.* (quoting *Kansas Penn*, 656 F.3d at 1216).

Plaintiff's class-of-one claim suffers the same deficiencies as his first cause of action under the First Amendment. As previously stated, Plaintiff has failed to allege sufficient facts indicating that he was treated differently than other similarly situated individuals. The standard, however, is even stricter for Plaintiff's class-of-one claim. To sufficiently plead a class-of-one claim, Plaintiff must allege that individuals were similarly situated "in every material respect." *See id.* Plaintiff does allege that he was not the only audience member wearing the prohibited stickers (ECF 25 at ¶ 29). To meet the standard, however, Plaintiff must also allege that there where others who offered the same degree of resistance as Plaintiff and were treated differently than him. Because Plaintiff has not sufficiently alleged the existence of similarly situated individuals in every material respect, his claims brought under the Fourteenth Amendment are properly dismissed.

For these reasons, the undersigned RECOMMENDS that the court DISMISS with prejudice Plaintiff's Fifth Amendment claim brought under the third cause of action, and DISMISS without prejudice Plaintiff's Fourteenth Amendment claim brought under the third cause of action.

iv.   *Fourth claim – Violation of the Sixth and Fourteenth Amendments*

Plaintiff brings his fourth claim only against the defendants who were directly involved in the arrest, namely, Defendants Dalton, Holley, Breur, Daniels and Peterson (ECF 35 at ¶ 143) (collectively, UHP Troopers). Plaintiff argues that the UHP Troopers violated his rights protected by the Sixth and Fourteenth Amendment by "failing to follow applicable statutes and processes and take Plaintiff to the magistrate to inform Plaintiff of the nature and cause of the alleged charge against him" and by failing to "allow Plaintiff to confer with his counsel after Plaintiff asked to do so" (ECF 25 at ¶¶ 143–144). "The Sixth Amendment (made applicable to states by the Fourteenth Amendment) provides an accused the right to be informed of the nature of the charges against him and the right to an attorney with the auxiliary right to call an attorney." *Ledbetter v. Bd. of Cnty. Com'rs of Cnty. of Shawnee, Kansas*, No. CIV. A. 00-2180-KHV, 2001 WL 705806, at *2 (D. Kan. May 31, 2001) (citing *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir. 1987)). Rights under the Sixth Amendment do not attach, however, until "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Id. (quoting Kirby v. Illinois,* 406 U.S. 682, 689 (1972)).

Plaintiff "has not alleged any adversary proceeding before or during his detention," thus, he cannot establish a violation of a constitutional right to be taken before the magistrate, to be informed of the charges against him, or to call a lawyer. *See id.* (citing *Kladis*, 823 F.2d at 1018 (no constitutional right to be informed of reason for arrest until government has committed itself

to prosecution); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (no Sixth Amendment right to call attorney or have attorney present before formal charges)).

Plaintiff's Fourteenth Amendment claim under this cause of action must also be dismissed for the same reason as his Fourteenth Amendment claim in his second cause of action. The Amended Complaint suggests that Plaintiff is invoking the same protections under the Fourteenth Amendment as he is for his Sixth Amendment claims. As previously mentioned, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Robinson*, 2018 WL 4691661, at *4 (citation and internal quotation marks omitted). Furthermore, Plaintiff has failed to allege any facts to support a viable procedural or substantive due process claim.

For these reasons, the undersigned RECOMMENDS that Plaintiff's fourth cause of action brought under the Sixth Amendment be DISMISSED with prejudice and RECOMMENDS the Fourteenth Amendment claim be dismissed without prejudice.

### D.  Plaintiff's State Law Claims

Plaintiff's fifth, sixth, and seventh claims are all brought under state law. Plaintiff argues that the UHP Troopers committed false imprisonment by arresting the Plaintiff without probable cause, they committed malicious prosecution by charging plaintiff for disruption of a lawful meeting, and they committed aggravated assault, battery, and harassment by arresting Plaintiff without probable cause (ECF 25 at ¶¶ 149–162).

"Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction." *Brock v. Herbert*, No.

2:09-cv-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012). Even so, "[u]nder 28 U.S.C. §
1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court
has dismissed all claims over which it has original jurisdiction. When all federal claims have been
dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining
state claims." *Miller v. Fluent Home, LLC*, No. 2:20-cv-00641-HCN-JCB, 2021 WL 8086367, at
*5 (D. Utah Mar. 18, 2021) (quoting *Koch*, 660 F.3d at 1248).

For reasons explained above, undersigned recommends that all of Plaintiff's federal law
claims be dismissed without prejudice for failure to state a claim. Because Plaintiff's remaining
claims are based on state law, the undersigned recommends that the court decline to exercise
supplemental jurisdiction over those claims. *See Bauchman ex rel. Bauchman v. W. High Sch.*, 132
F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues
of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case
without prejudice.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).
Accordingly, the undersigned RECOMMENDS that Plaintiff's fifth, sixth, and seventh causes of
action brought under state law be DISMISSED without prejudice.

### E.  Plaintiff's Motion for Writ Affidavit of Commercial Liability

Plaintiff argues that Defendants' Motion to Dismiss is procedurally improper because it
includes "facts" which are outside the pleadings and unsupported (ECF 41 at 2–3). Plaintiff seeks
an order requiring Defendants to file sworn affidavits or declarations (*id.*). Defendants argue that
their Motion to Dismiss is procedurally proper, and there is no basis to require Defendants to file
sworn affidavits or declarations (ECF 42 at 2). Furthermore, any "facts" in their Motion to Dismiss
are "legal arguments not facts" (ECF 42 at 3). Insofar as Plaintiff is arguing that the Motion to
Dismiss is improper because Defendants' counsel did not sign an affidavit swearing to the

accuracy of all of his statements in the motion, the court finds Plaintiff's argument unfounded for the reasons below.

Under Federal Rule of Civil Procedure 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name," but, "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." Here, Defendants' counsel signed their name on the final page of each of his filings related to this motion, fulfilling the basic requirement of Rule 11(a) (ECF 34 at 40, ECF 40 at 16). Moreover, Plaintiff asserts that the holding in *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964) supports his motion (ECF 41 at 2). Not only is *Trinsey* not controlling, but Plaintiff also misinterprets what this case holds. *Trinsey* deals with a dispute between two parties over a particular tract of land. *Id.* at 648. The defendants moved to dismiss the case from the current court because arbitration proceedings would determine the title of the land. *Id.* at 648–49. The court in *Trinsey* stated that nothing indicated that arbitration would determine title except "the statement at [oral] argument that a counterclaim had been filed in the arbitration proceedings by defendant." *Id.* at 649. Because the defendants were relying on a statement made during oral argument, the court in *Trinsey* ruled that "[t]he defendants' motion to dismiss for failure to state a claim unsupported by affidavits or depositions is incomplete because it requests this Court to consider facts outside the record which have not been presented in the form required by Rules 12(b)(6) and 56(c)." *Id.* Consequently, the ruling in *Trinsey* has no bearing on this case because Defendants' Motion is not based on any facts outside the record, like the oral statement in *Trinsey*.[12] Thus, it is unfounded for Plaintiff to assert that the court must act as though Defendants never advanced a legal defense in their motion to dismiss until they sign an affidavit.

---

[12] As previously noted, Defendants did introduce body camera footage, but the court did not consider it as it did not alter any basis for Defendants' Motion.

For these reasons, the court finds that Defendants' Motion to Dismiss is procedurally proper, and there is no basis to require Defendants to submit sworn declarations or affidavits at this stage of the proceedings, and the court DENIES Plaintiff's Motion for Writ.

## ORDER

For the foregoing reasons, the court hereby ORDERS as follows:

1. Plaintiff's Motion for Writ Affidavit of Commercial Liability (ECF 41) is DENIED.

## RECOMMENDATION

In addition, the undersigned hereby RECOMMENDS that:

1. Defendants' Motion to Dismiss be GRANTED; and

2. Plaintiff's "official-capacity" claims against all Defendants be DISMISSED WITHOUT PREJUDICE;

3. Plaintiff's claims against Senator McCay be DISMISSED WITHOUT PREJUDICE;

4. Plaintiff's first cause of action, and his First Amendment claim brought under the second cause of action be DISMISSED WITH PREJUDICE, for failure to overcome qualified immunity;

5. Plaintiff's Fifth Amendment claim brought under the third cause of action, and his Sixth Amendment claim brought under the fourth cause of action be DISMISSED WITH PREJUDICE, for failure to state a claim;

6. Plaintiff's Fourteenth Amendment claims brought under the second, third, and fourth causes of action be DISMISSED WITHOUT PREJUDICE; and

7.  Plaintiff's remaining claims under the fifth, sixth and seventh causes of action

be DISMISSED WITHOUT PREJUDICE.[13]

**NOTICE**

Copies of the above Report and Recommendation are being sent to all parties who are

hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any

party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 8 August 2023.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[13] The undersigned recommends dismissal of first cause of action and the First Amendment claim under the second cause of action "with prejudice because they are entitled to qualified immunity." *See Vreeland v. Olson*, No. 20-CV-02330-PAB-SKC, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) (citing *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (instructing district court to dismiss based on qualified immunity "with prejudice")). The undersigned recommends dismissal of the Fifth Amendment claim in the third cause of action, and the Sixth Amendment claim in the fourth cause of action for failure to state a claim. *See id.* ("Dismissal with prejudice is proper only 'where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'" (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001))). The undersigned recommends dismissal of the remaining claims without prejudice due to "pleading error[s] that may be cured." *Id.*