IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MIKEL RAY BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL GRIGGS, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:22-cv-00091-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint in Part.[1] Defendants—the Utah State Legislature; Utah Senator Daniel McCay; Utah Senate Sergeant-at-Arms Darrell Griggs; the State of Utah, "acting through the Utah Highway Patrol" (UHP); UHP Superintendent Michael Rapich; and UHP Officers Seth Dalton, Greg Holley, Wade Breur, Roger Daniels, and Ernest Peterson—argue the court should dismiss select portions of Plaintiff Michael Brown's first, second, third, and fourth causes of action.[2] As explained below, the court GRANTS Defendants' Motion.

**FACTUAL BACKGROUND**[3]

In March 2022, Brown attended a Utah State Senate committee hearing to hear debate on a proposed House bill, HB60.[4] HB60 concerned "vaccine passports," and a "large amount of

---

[1] ECF 57, *Defendants' Motion to Dismiss Second Amended Complaint in Part* (*Motion to Dismiss*).

[2] *Id.* at 1.

[3] As required on a motion to dismiss, the court accepts all well-pleaded allegations in the Complaint as true and construes them in the light most favorable to Brown.

[4] *See* ECF 56, *Second Amended Complaint and Demand for Jury Trial* (*SAC*) ¶ 40.

1

people" attended the hearing.[5] While Brown waited for the hearing to start, someone passed him a clipboard with stickers reading "Vote Yes, HB60."[6] Brown took two stickers, as other attendees had done, and attached them to his hat and cellphone case.[7]

Shortly thereafter, Brown noticed Assistant Sergeant Griggs "going around the room and demanding that the stickers be removed."[8] Brown observed others questioning Assistant Sergeant Griggs about why they had to remove the stickers, and he joined in.[9] He began "to record the events with his cell phone," and asked Assistant Sergeant Griggs, "what rule am I breaking?"[10] Sometime later, Assistant Sergeant Griggs gestured to Officer Breur and Officer Breur joined the interaction.[11] Brown engaged with Officer Breur, repeatedly questioning him about what rule prohibited attendees from displaying stickers, political clothing, signs, and banners.[12] Nevertheless, Brown removed the HB60 stickers from his hat and phone case.[13]

A few minutes later, Assistant Sergeant Griggs, Officer Breur, and Officer Holley briefly conversed with Senator McCay, who was preparing to preside over the hearing.[14] Senator McCay directed them "to arrest [Brown] if he did not remove any stickers" or other apparel containing "political messages."[15] Senator McCay then opened the meeting.[16] Senator McCay

---

[5] *Id.* ¶ 42.
[6] *Id.* ¶ 43.
[7] *Id.* ¶¶ 43–45.
[8] *Id.* ¶ 48.
[9] *Id.* ¶¶ 49–50.
[10] *Id.*
[11] *Id.* ¶ 54.
[12] *Id.* ¶¶ 55–56, 59–62, 65–69.
[13] *Id.* ¶¶ 53, 64, 72.
[14] *Id.* ¶ 73.
[15] *Id.* ¶ 74.
[16] *Id.* ¶ 75.

informed the crowd that various attendees were violating rules against the display of "posters," "stickers," "outbursts," "flag waiving," "protests," "chants," and "demonstrations."[17] He explained he would "painfully" recess the hearing for five minutes in order to allow these attendees to "come into compliance" with these rules.[18]

As the recess began, Assistant Sergeant Griggs approached Brown.[19] He instructed Brown to put his stickers somewhere out of sight.[20] Brown did not object and voluntarily gave Assistant Sergeant Griggs one of his stickers.[21] However, Brown proceeded to question Assistant Sergeant Griggs about a Ukrainian flag pin on his lapel and to argue about the rules prohibiting him from possessing or displaying the stickers.[22] He also refused to hand over the second sticker after Assistant Sergeant Griggs asked him to do so.[23]

Following this exchange, Assistant Sergeant Griggs gestured to Officer Holley, and Officer Holley twice motioned to Brown to "come with him."[24] Brown did not comply and insisted his stickers were put away.[25] In turn, Officers Holley and Dalton approached Brown and forcibly removed him from the hearing room.[26] Supported by Officers Breur, Daniels, and Peterson, they took Brown to a holding room where they informed him he was under arrest, held him for approximately an hour, and then cited him for "disruption of a meeting or procession."[27]

---

[17] *Id.* ¶¶ 75–78.
[18] *Id.* ¶ 79.
[19] *Id.* ¶ 87.
[20] *Id.* ¶¶ 87–89.
[21] *Id.* ¶¶ 88–90.
[22] *Id.* ¶¶ 91, 93–101.
[23] *Id.* ¶ 92.
[24] *Id.* ¶ 103.
[25] *Id.* ¶¶ 105–06.
[26] *Id.* ¶¶ 104–27.
[27] *Id.* ¶¶ 128, 150–60.

Thereafter, Assistant Sergeant Griggs and each of the arresting Officers filed reports documenting Brown's arrest.[28] In his report, Assistant Sergeant Griggs described how he had "everyone remove all stickers and flags as they were going into the committee meeting," "he approached Plaintiff after the recess," Plaintiff "refused to remove the stickers," and "Plaintiff still had one sticker on his leg."[29]

## PROCEDURAL HISTORY

On July 15, 2022, Brown filed a pro se Complaint against the UHP, Assistant Sergeant Griggs, and Officers Dalton, Holley, Breur, Daniels, and Peterson.[30] Brown asserted eleven causes of action arising out of his March 2022 ejection from the Senate committee hearing.[31]

Defendants filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6),[32] and Brown responded by filing his First Amended Complaint (FAC).[33] The FAC removed UHP as a Defendant, added Senator McCay and Superintendent Rapich as Defendants, and asserted seven revised causes of action.[34] The FAC brought each applicable cause of action against the individual Defendants in both their personal and official capacities, except Superintendent Rapich, who Brown sued in his official capacity only.[35]

Thereafter, the court denied Defendants' pending Motion to Dismiss as moot and

---

[28] *Id.* ¶ 192.

[29] *Id.* ¶¶ 198–99.

[30] ECF 1, *Verified Complaint and Petition for Declaratory Judgment*; *see also* ECF 3, *Errata Verified Complaint and Petition for Declaratory Judgment* (*Complaint*).

[31] *See Complaint* ¶¶ 15–65.

[32] *See* ECF 23, *Defendants' Motion to Dismiss.*

[33] *See* ECF 25, *Verified Complaint for Compensatory Damages, Injunctive and Declaratory Relief, and Demand for Trial by Jury* (*FAC*).

[34] *Compare Complaint* ¶¶ 1–11, 66–123, *with FAC* ¶¶ 1–9, 123–62.

[35] *FAC* ¶¶ 2–9.

Defendants filed a new Motion to Dismiss Brown's FAC.[36] The court referred the Motion to Magistrate Judge Cecilia M. Romero, who issued a Report recommending the court dismiss the FAC in its entirety.[37] The court subsequently issued an Order adopting the Report and affording Brown 30 days to file a motion for leave to file a second amended complaint.[38]

Brown timely filed a Motion for Leave to File a Second Amended Complaint, together with a proposed Second Amended Complaint (PSAC).[39] Brown's PSAC sought to (a) add "the State of Utah, acting through the [UHP]," the Utah State Legislature, and "John and Jane Does 1–10" as Defendants, (b) revise and supplement his factual allegations, (c) alter his requested relief, and (d) assert seven again-revised causes of action:

1. unlawful arrest in violation of the Fourth Amendment and Utah Const. art. I § 14 (against all Defendants);
2. retaliatory arrest in violation of the First Amendment and Utah Const. art. I §§ 1 and 15 (against all Defendants);
3. stifling speech in violation of the First Amendment and Utah Const. art. I §§ 1 and 15 (against all Defendants);
4. malicious prosecution in violation of the Fourth Amendment and Utah Const. art. I § 14 (against Assistant Sergeant Griggs);
5. excessive force (against Officers Dalton, Holley, Breur, Daniels, and Peterson);
6. violation of Fourteenth Amendment equal protection and Utah Const. art. I §§ 2 and 24 (against all Defendants); and
7. a constitutional challenge to legislative rules limiting the public display of political apparel (against all Defendants).[40]

Like the FAC, the PSAC brought each applicable cause of action against the individual

---

[36] *See* ECF 33, *Order Denying as Moot Defendants' Motion to Dismiss*; ECF 34, *Defendants' Motion to Dismiss and Memorandum in Support*.

[37] *See* ECF 44, *Report & Recommendation Re: ECF 34 and Order Denying ECF 41*.

[38] *See* ECF 48, *Memorandum Decision and Order Adopting Report and Recommendation*. The court's Order adopted Judge Romero's Report with one minor modification—it dismissed Brown's first cause of action against Senator McCay in his individual capacity with prejudice, instead of without prejudice. *Id.* at 19 n. 173.

[39] *See* ECF 49, *Plaintiff's Motion for Leave to File Second Amended Complaint*; ECF 50, *Plaintiff's Notice of Errata*; ECF 50-2, *Second Amended Complaint and Demand for Trial by Jury* (PSAC).

[40] *Compare FAC, with PSAC*.

Defendants in both their personal and official capacities, save for Superintendent Rapich, who Brown again sued only in his official capacity.[41] Defendants opposed the Motion with respect to Brown's first, second, third, and fourth proposed causes of action against the individual Defendants in their personal capacities, arguing Brown restated claims the court dismissed with prejudice in its Order adopting Judge Romero's Report and Recommendation.[42]

On May 17, 2024, the court issued an Order granting Brown's Motion in part and denying Brown's Motion in part.[43] The court denied the Motion with respect to Brown's first and second proposed causes of action against the individual Defendants in their personal capacities, concluding these claims reasserted previously dismissed claims.[44] The court also denied Brown's Motion with respect to Brown's first through fourth proposed causes of action against the State of Utah, the Utah State Legislature, and the individual Defendants in their official capacities.[45] The court reasoned these claims were futile because each cause of action stated a claim for relief based on 42 U.S.C. § 1983, and § 1983 does not provide a cause of action for damages against states, state agencies, and state employees sued in their official capacities.[46] The court otherwise granted Brown's motion and permitted Brown 30 days to file his Second Amended Complaint (SAC).[47]

On June 14, 2024, Brown timely filed his SAC.[48] Consistent with the court's Order on

---

[41] *See* PSAC ¶¶ 5–12.

[42] ECF 51, *Memorandum Opposing Motion for Leave to File Second Amended Complaint (Dkt. No. 49)* at 4–5.

[43] *See* ECF 55, *Memorandum Decision and Order* (*Leave to Amend Order*).

[44] *Id.* at 10–12. The court did not specifically discuss Superintendent Rapich while analyzing the preclusive effect of its Order adopting Judge Romero's Report on Brown's personal capacity claims because the PSAC named Superintendent Rapich in his official capacity only.

[45] *Id.* at 8–10.

[46] *Id.*

[47] *Id.* at 13.

[48] *See generally* SAC.

Brown's Motion for Leave to Amend, the SAC includes only the following five causes of action:

1. stifling free speech in violation of the First Amendment and Utah Const. art. I §§ 1 and 15 (against Senator McCay, Superintendent Rapich, and Officers Dalton, Holley, Breur, Daniels, and Peterson);
2. malicious prosecution in violation of the Fourth Amendment and Utah Const. art. I § 14 (against Assistant Sergeant Griggs);
3. excessive force (against Officers Dalton, Holley, Breur, Daniels, and Peterson);
4. violation of Fourteenth Amendment equal protection and Utah Const. art. I §§ 2 and 24 (against all Defendants); and
5. a constitutional challenge to legislative rules limiting the public display of political apparel (against all Defendants).[49]

Nevertheless, the SAC—like Brown's original Complaint, FAC, and PSAC—brings each applicable cause of action against the individual Defendants in both their personal and official capacities, except Superintendent Rapich, who Brown sues in his official capacity only.[50] Defendants filed the present Motion to Dismiss on June 28, 2024.[51] The Motion is fully briefed and ripe for review.[52]

## LEGAL STANDARDS

Defendants bring their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[53] A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a plaintiff's complaint.[54] To survive a Rule 12(b)(6) motion to dismiss, a

---

[49] *Id.* ¶¶ 224–75.

[50] *Id.* ¶¶ 5–12.

[51] *Motion to Dismiss* at 1–2.

[52] *See* ECF 61, *Plaintiff's Opposition to Defendants' Motion to Dismiss Second Amended Complaint in Part* (*Opposition*); ECF 62, *Reply Memorandum Supporting Defendants' Motion to Dismiss Second Amended Complaint in Part*. The court concludes a hearing is unnecessary and decides the Motions on the papers. *See* DUCivR 7-1(g).

[53] *Motion to Dismiss* at 1.

[54] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

plaintiff "must plead facts sufficient to state a claim to relief that is plausible on its face."[55] A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56] The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[57]

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can take two forms: a facial attack or a factual attack.[58] A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence challenging the jurisdictional basis of the complaint.[59] Here, Defendants bring a facial attack. In evaluating a facial attack, the court "must accept the factual allegations in the complaint as true,"[60] and "apply a standard patterned on Rule 12(b)(6)."[61]

## ANALYSIS

Defendants argue the court should dismiss Brown's first through fourth causes of action under Rule 12(b)(6) and 12(b)(1) to the extent they raise (I) official capacity claims against the individual defendants, (II) claims against the State of Utah and the Utah State Legislature, and (III) personal capacity claims against Senator McCay and Assistant Sergeant Griggs. The court reviews each argument in turn.

---

[55] *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190,1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

[56] *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

[57] *Albers v. Bd. Cnty. Comm'rs Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014).

[58] *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).

[59] *Muscogee (Creek) Nation v. Okla. Tax. Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[60] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

[61] *Garling v. EPA*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

## I. Brown's Official Capacity Claims Against the Individual Defendants

Defendants argue the court should dismiss Brown's first through fourth causes of action against each of the individual Defendants—Senator McCay, Assistant Sergeant Griggs, Superintendent Rapich, and Officers Dalton, Holley, Breur, Daniels, and Peterson—in their official capacities for two reasons.[62] First, Defendants argue Brown's first and second causes of action against the individual Defendants in their official capacities are improperly brought.[63] Brown does not oppose this argument and the court agrees. As summarized above, the court specifically denied Brown leave to bring these claims against the individual Defendants in its Order on Brown's Motion for Leave to File a Second Amended Complaint.[64] The court explained the claims were "futile," and "would . . . be subject to dismissal if included in an amended complaint" because Brown brought each cause of action under 42 U.S.C. § 1983, and long-standing Supreme Court precedent precludes § 1983 claims for damages against state employees in their official capacities.[65] Second, Defendants argue Brown's third and fourth causes of action against the individual Defendants in their official capacities fail as a matter of

---

[62] *Motion to Dismiss* at 6–8.

[63] *Id.* at 7.

[64] *Leave to Amend Order* at 8–9.

[65] *Id.*

law.[66] Defendants argue these claims, too, fail under § 1983 as claims for damages against state employees in their official capacities.[67] Brown expressly concedes the point.[68]

Nevertheless, Brown argues the court should refrain from dismissing his first through fourth causes of action against the individual Defendants in their official capacities because each cause of action raises distinct claims under federal and state law, and Utah law permits his state law claims.[69] Defendants contend the Eleventh Amendment independently bars any state law claims contained in Brown's first through fourth causes of action.[70] "The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state,"[71] unless the federal government abrogates a state's immunity or the state waives it.[72] The Eleventh Amendment also bars unconsented suits in federal court against state employees in their official capacities.[73] This is because "a suit against an individual in [their] official capacity is, in reality, a suit against the agency which the individual represents . . . ."[74] Here, Brown does not dispute each of the individual Defendants is a State employee, sued for damages in their

---

[66] *Motion to Dismiss* at 7–8.

[67] *Id.* at 7–8. *See also Will v. Michigan Dep't State Police*, 491 U.S. 58, 71 (1989); *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

[68] *Opposition* at 3–4, 10 (acknowledging "current binding case law" does not permit any of Brown's § 1983 claims against the individual Defendants in their official capacities). Brown argues the state of the law "defies commonsense," and cites a passage from Katherine M. Crocker, *Reconsidering Section 1983's Nonabrogation of Sovereign Immunity*, 73 Fla. L. Rev. 523 (2021) in support of his position. *Id.* at 3–4. However, the court will not disregard binding precedent based on Brown's unadorned disagreement.

[69] *Id.* at 4–5.

[70] ECF 61 at 4.

[71] *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009).

[72] *Va. Office Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation." (citation omitted)); *see also Free Speech Coal. v. Anderson*, No. 23-4104, 2024 WL 4352434, at *2 (10th Cir. Oct. 1, 2024) ("*Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law.").

[73] *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[74] *Id.*

capacity as a State employee.[75]  And Brown "neither alleges in [his] [SAC], nor is there any other indication in the record, that the state of [Utah] waived its Eleventh Amendment immunity in this case."[76]

Therefore, the court dismisses Brown's first through fourth causes of action against the individual Defendants in their official capacities under federal law for failure to state a claim under § 1983.  It dismisses Brown's first through fourth causes of action against the individual Defendants in their official capacities under state law for lack of jurisdiction under the Eleventh Amendment.

## II. Brown's Claims Against the State of Utah and the Utah State Legislature

Defendants next argue the court should dismiss Brown's fourth cause of action to the extent it is brought against the State of Utah and the Utah State Legislature because neither is amendable to suit under § 1983 and the Eleventh Amendment strips the court's jurisdiction over claims against the State.[77]  On these issues, Brown again concedes binding precedent bars his § 1983 claims and offers no reason to believe the State of Utah and Utah State Legislature are not subject to Eleventh Amendment immunity.[78]  Thus, the court also dismisses Brown's fourth

---

[75] *See Pettit v. United States Dist. Ct. Dist. Utah*, No. 2:16-cv-01201-DS, 2017 WL 943924, at *2 (D. Utah Mar. 9, 2017).

[76] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Brown argues his state law claims are permissible because the "Utah Governmental Immunity Act [(UGIA)] does not apply to claims alleging state constitutional violations." *Opposition* at 5 (quoting *Jensen v. Cunningham*, 250 P.3d 465, 479 (Utah 2011)).  However, the scope of Utah's sovereign immunity under the UGIA is separate and apart from the Eleventh Amendment's jurisdictional limitation, which applies when a plaintiff sues a state in federal court.  *Cf. Davey v. Blood*, Case No. 2:23-cv-442-AMA, 2024 WL 3728072, at *4–7 (D. Utah Aug. 7, 2024) (collecting cases and explaining the scope of Utah's common law sovereign immunity); *Halverson v. Univ. Utah Sch. Med.*, No. 2:06-cv-228-DAK, 2007 WL 2892633, at *7–8 (D. Utah Sept. 28, 2007) ("A state may waive its Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text of a state statutory or constitutional provision as will leave no room for any other reasonable construction.").

[77] *Motion to Dismiss* at 8–10.

[78] *See Opposition* at 5.

cause of action against the State of Utah and the Utah State Legislature for failure to state a claim and lack of jurisdiction.

### III. Brown's Personal Capacity Claims Against Senator McCay and Assistant Sergeant Griggs

Defendants finally argue the court should dismiss Brown's first, second, and fourth causes of action against Senator McCay and Assistant Sergeant Griggs in their personal capacities because Senator McCay and Assistant Sergeant Griggs are subject to legislative immunity.[79]

"Legislators, including local legislators, are absolutely immune from suit for their legislative activities. Legislative immunity also extends to non-legislative officials so long as their conduct involves the performance of legislative functions."[80] "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."[81] Thus, "to determine whether Defendants should be cloaked in legislative immunity, we look to the function that [they] were performing when the actions at issue took place, and we examine the nature of those actions."[82] "Legislative acts include, among other things, voting on legislation, resolutions, and ordinances; proposing and signing legislation; and conducting legislative investigations."[83] Legislative acts do not include "administrative actions which do not concern the enactment or promulgation of public policy."[84]

---

[79] *Motion to Dismiss* at 10–12.

[80] *Borde v. Bd. Cnty Com'rs Luna Cnty., N.M.*, 423 F.App'x 798, 801 (2011) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 55 (1998)).

[81] *Id.* (holding legislative immunity applied to a defendant who "allegedly singled out the plaintiff for investigation in order to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights" (internal quotation marks and citation omitted)).

[82] *Kamplain v. Curry Cnty. Bd. Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) (internal citation omitted).

[83] *Borde*, 423 F.App'x at 801 (internal citations omitted).

[84] *Id.*

12

For example, in *Kamplain v. Curry Board of County Commissioners*, the Tenth Circuit denied legislative immunity to a board of county commissioners who banned the plaintiff from participating in future commission meetings.[85] The issue arose after the plaintiff attended a board meeting, protested a board decision, and was removed from the meeting.[86] Several weeks later, the group voted to ban him from all future meetings.[87] The Tenth Circuit denied the board legislative immunity even though the board's "vote to ban Plaintiff from all future Commission meetings" took place at a regularly scheduled Commission meeting because the vote did not "concern the enactment or promulgation of public policy," and did not take place while the board was actively "voting on, speaking on, or investigating a legislative issue."[88]

The Tenth Circuit did not consider whether legislative immunity extended to the board's efforts "to prevent or curtail Plaintiff's actions or speech *during* [the] public Commission meeting,"[89] and neither party has proffered any binding precedent to that effect. However, Defendants cite the District of Connecticut's decision in *Avila v. Estate of Koorgam*.[90] In *Avila*, the plaintiff attended a community development committee hearing "devoted to discussion of a land disposition agreement."[91] The plaintiff—a committee member—asked a member of the public a question in Spanish and refused to translate the question into English when the defendant—the committee chair—asked her to do so.[92] After arguing with the plaintiff about the

---

[85] *Kamplain*, 159 F.3d at 1252–53.

[86] *Id.* at 1250.

[87] *Id.*

[88] *Id.* at 1252.

[89] *Id.* at 1252 n. 4 (emphasis added).

[90] Motion to Dismiss at 11–12 (citing *Avila v. Est. Kroogman*, No. 3:02-cv-851-WWE, 2006 WL 214032 (D. Conn. Jan. 27, 2006)).

[91] *Avila*, 2006 WL 214032 at *1–2.

[92] *Id.*

13

translation issue, the defendant ordered her to leave the committee and directed two police officers to remove her.[93] The court found the defendant was entitled to legislative immunity against claims arising out of the incident because her order was intended "to return the proceedings to an investigation of the public opinion on the relevant land disposition issues."[94] The court reasoned a defendant's "acts to maintain . . . orderly and relevant public discussion during a legislative body's meeting further that body's investigation of the public opinion on the meeting's subject matter."[95]

Upon review of *Avila* and additional persuasive precedent,[96] the court agrees with Defendants that Senator McCay and Assistant Sergeant Griggs are entitled to legislative immunity against Brown's first and fourth causes of action.[97] The court likewise agrees with Defendants that Assistant Sergeant Griggs is entitled to legislative immunity against Brown's second cause of action. These causes of action—for stifling free speech, equal protection, and malicious prosecution—are each premised on Senator McCay and Assistant Sergeant Griggs' acts at the March 2022 committee hearing.[98] And it is clear from the face of Brown's SAC that Senator McCay and Assistant Sergeant Griggs' acts were "legislative" in nature. As Brown's SAC alleges, "[t]he purpose of the [hearing] was to have public debate about legislation before

---

[93] *Id.*

[94] *Id.* at *3.

[95] *Id.*

[96] *See, e.g.*, *Murray v. City New Buffalo*, 708 F.Supp.3d 1313, 1321, 1337–38 (W.D. Mich. Apr. 6 2023) (holding mayor who "interrupted, truncated, or terminated" comments at a city council meeting was entitled to legislative immunity because his conducted conformed with the council's goal of "gathering information during the public-comment period of a regularly scheduled city council meeting"); *Afjeh v. Vill. Ottawa Hills*, No. 3:09-cv-2672, 2010 WL 1795973, at *2 (N.D. Ohio May 5, 2010) (collecting cases and holding that "moderating the speech and activity of public attendees at a local legislative meeting is legislative activity protected by absolute immunity").

[97] Brown's SAC does not name Assistant Sergeant Griggs as a defendant to his first cause of action. However, Brown's Opposition suggests that this omission is a "scriveners error" he intends to fix via amendment. *Opposition* at 6 n. 1.

[98] *See SAC* ¶¶ 225–230, 235–240, 257–265.

the Utah State Legislature,"[99] and Senator McCay and Assistant Sergeant Griggs were responsible for the hearing's efficient and effective operation. Senator McCay was tasked with "ensur[ing] the integrity" of the hearing by "enforcing legislative rules and parliamentary procedure without delay,"[100] whereas Assistant Sergeant Griggs was tasked with "maintain[ing] security" and "enforc[ing] . . . legislative rules."[101]

Brown contends Senator McCay and Assistant Sergeant Griggs' could not have been acting in their legislative capacities to the extent they imposed limits on the display of political messages and ordered his arrest because their actions were not consistent with any "written rule," and he complied with their demands by removing his HB60 stickers.[102] But Brown blurs the lines drawn in *Kamplain* and *Avila*. Regardless of whether Senator McCay and Assistant Sergeant Griggs' actions were lawful, and regardless of whether Brown complied with their demands, Senator McCay and Assistant Sergeant Griggs' actions fell wholly within the "sphere" of their duties to ensure orderly debate on HB60.[103] Their actions were not post factum, administrative efforts to arrange orderly conduct at future committee hearings.

Thus, even accepting the allegations in Brown's SAC as true, Senator McCay and Assistant Sergeant Griggs are personally immune from liability for the acts underlying Brown's first, second, and fourth causes of action.[104]

---

[99] *Id.* ¶ 227.

[100] *Id.* ¶¶ 31–34, 38.

[101] *Id.* ¶¶ 35–37, 38.

[102] *Opposition* at 9.

[103] *Kamplain*, 159 F.3d at 1251 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). *See also Murray*, 708 F.Supp.3d at 1338 (holding legislative immunity applied "[e]ven if" the defendant's legislative acts were "in contravention of Plaintiff's First Amendment rights").

[104] Notably, the court's analysis of this issue comports with Judge Romero's Report, in which she held that Senator McCay was subject to legislative immunity against the personal capacity claims contained in Brown's FAC. *See* ECF 44 at 10–12.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion.[105] Brown's first through fourth causes of action are dismissed insofar as they assert official capacity claims against the individual Defendants, claims against the State of Utah, "through the Utah Highway Patrol" and the Utah State Legislature, and personal capacity claims against Senator McCay and Assistant Sergeant Griggs. The net effect of this decision is that only Brown's first, third, fourth, and fifth causes of action survive the Motion, and Brown may only pursue those causes of action as follows: (1) Brown may only assert his first cause of action against Officers Dalton, Holley, Breur, Daniels, and Peterson in their personal capacities; (2) Brown may only assert his third cause of action against Officers Dalton, Holley, Breur, Daniels, and Peterson in their personal capacities; (3) Brown may only assert his fourth cause of action against Officers Dalton, Holley, Breur, Daniels, and Peterson in their personal capacities; and (4) Brown may assert his fifth cause of action, unchanged.

DATED this 4th of November 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[105] ECF 57.